**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **IN RE PAYMENT CARD** | **Case No. 05-md-01720** |
| **INTERCHANGE FEE AND** | **(MKB) (VMS)** |
| **MERCHANT DISCOUNT** | |
| **ANTITRUST LITIGATION** | |

**This Document Applies to:**
**Palladino, et al. v. JPMorgan Chase & Co.,** *et al.*
**Case No. 1:23-cv-1215-MKB-VMS**


**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**PLAINTIFFS' MOTION TO REMAND**

1

# TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................ 5

II.     PROCEDURAL BACKGROUND ................................................................. 7

III.    CAFA JURISDICTION ................................................................................. 8

    A.    Defendants' Removal Notice Must Be Strictly Construed. ................................ 8

    B.    Class Action Fairness Act Diversity Jurisdiction Is Not In Issue Here. ............ 8

    C.    CAFA's "Local Controversy" Exception Is Controlling Here. ....................... 9

        1.    Two-thirds of the Plaintiffs Must Be California Citizens. ....... 10

        2.    At Least One Defendant is a Citizen of California. ............... 11

        3.    Damages Were Incurred Within the State of California. ....... 11

        4.    No Comparable Cases Have Been Filed Within Three Years Prior To The Filing Of This Action. .......................................... 12

IV.    THE EDGE ACT ........................................................................................... 12

    A.    Visa Has No Standing To Assert Removal Under the Edge Act. ................... 13

    B.    The Edge Act 12 U.S.C. §§632 and 633 Do Not Support Removal by Non Edge Act Banks. ............................................................................................... 14

        1.    An Edge Act Bank Must Be a Party. ..................................... 14

        2.    The Bank Defendants Named Are Not Edge Act Banks. ........ 15

        3.    What Are Edge Act Banks? ................................................... 16

        4.    What Types of Activities May an Edge or Agreement Corporation or Foreign Subsidiary of a U.S. Banking Organization Conduct in the United States? ........................... 16

        5.    The "federally chartered corporation" Language in the Act Refers to Edge Act Banks. ..................................................... 17

    C.    There Is No Evidence of Any Edge Act Bank Participation in This Litigation. ......................................................................................................... 19

V.     CONCLUSION ............................................................................................. 20

Plaintiffs' Memorandum re Motion to Remand Case No. 1:23-cv-1215-MKB-VMS

# TABLE OF AUTHORITIES

## Cases

*Am. Int'l Grp., Inc. v. Bank of Am. Corp.*, 712 F.3d 775, 782 (2d Cir. 2013) ................ 14, 16, 17

*Bridewell/Sledge v Blue Cross of Cal.,* 798 f.3d 923, (9th Cir., 2015.) ........................... 8

*Clayworth v. Pfizer, Inc., 49 Cal.4th 758, 111 Cal. Rptr. 3d 666, 233 P.3d 1066 (Cal. 2010)* ...... 5

*Dexia v. Bear, Stearns & Co.* 945 F. Supp. 2d 426 (S.D.N.Y. 2013) ........................... 13

*Emrich v. Touche Ross Co., 846 F.2d 1190 (9th Cir. 1988)* ..................................... 8

*Gaus v. Miles, 980 F.2d 564, 566 (9th Cir. 1992)* ............................................. 8

*Harris v. Bankers Life and Cas. Co., 425 F.3d 689 (9th Cir. 2005)* ........................... 8

*Illinois Brick Co., v. Illinois* 431 U.S. 720 (1977) .......................................... 5

*Laughlin v. Kmart Corp* 50 F.3d 871 (10th Cir. 1995) ........................................ 13

*Montefiore Med Center v.  Teamsters Local* 272  642 F.2d 321 (2d Cir. 2011) ................. 13

*Nishimoto v. Federman-Bachrach & Assocs.*, 903 F.2d 709, 712 n. 3 (9th Cir. 1990) ............ 8

*Singh v. American Honda Finance Co.*, 925 F.3d 1053 (9th Cir. 2019) ......................... 11

## Statutes

12 CFR Parts 211 and 265 [Regulation K; Docket No. R-0994] ................................. 15

12 U.S.C. § 1843(c)(13) ..................................................................... 16

25A of the FRA, 12 U.S.C. 611 through 631.  (Title 12 / Chapter 1 / Part 28 / Subpart A § 28.2 eCFR 12 CFR Part 28 -- International Banking Activities ........................................ 12

28 U.S.C. 1332(d)(2)(A) (CAFA) ........................................................... 7, 8

CAFA 28 U.S.C. 1332(d)(4)(A) .............................................................. 10

CAFA 28 USC §1332 (d)(4)(A)(i) ........................................................... 10

CAFA 28 USC 1332 (d)(4)(A)(i) ............................................................ 12

CAFA, 28 USC §1332 (d)(4)(A)(i) ........................................................... 9

CAFA, 28 USC §1332 (d)(4)(B) ............................................................. 12

Cal Bus and Prof Code §17200 et seq.(Unfair Competition Law, UCL) ...................... 5, 10

Cartwright Act (Cal Bus & Prof Code) §16700 *et seq.* ..................................... 5, 10

Edge Act 12 U.S.C. §§ 611–631 .......................................................... 12, 13

Edge Act of 1919 as amended in 1933.  *12 U.S.C. § 632, § 633* ...................... 6, 13, 14

Federal Reserve Act (FRA) §25, 12 U.S.C. 601 through 604a.  (§ 28.2 Definitions ............ 13

Regulation K. 12 CFR 211.6 ................................................................ 16

Title 12 / Chapter 1 / Part 28 / Subpart A § 28.2  eCFR :: 12 CFR Part 28 -- International Banking Activities ......................................................................... 12

4

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO REMAND THE CASE TO SUPERIOR COURT OF CALIFORNIA – COUNTY OF SAN FRANCISCO

### INTRODUCTION

1.      This is a consumers' class action filed in the State of California, alleging violation of California statutory law.  Brought by citizens of the State of California against Visa, Mastercard and eight of the largest banks in the state.  The Plaintiffs allege that the Defendants have and continue to conspiratorially fix the price of the credit/debit card interchange fees charged to the consumers' Visa and Mastercard credit- and debit-card accounts in the State of California, and that they fail to disclose such overcharges in violation of Cal Bus and Prof Code §17200 *et seq*. (Unfair Competition Law, UCL) and that Plaintiffs are entitled to monetary damages, disgorgement, and injunctive relief as provided by California law.

2.      In 1978, the California legislature amended the Cartwright Act (Cal Bus & Prof Code §16700, 16750) to provide California consumers standing under its antitrust laws to recover damages sustained as persons injured in Cartwright Act cases.  (Cal Bus & Prof Code §16750).  The California Supreme Court held unanimously with respect to the 1978 *Illinois Brick* "repealer" statute (See *Illinois Brick Co., v. Illinois* 431 U.S. 720 (1977): "This *Illinois Brick* repealer bill passed both houses unanimously and wrote into the Cartwright Act a repudiation of *Illinois Brick's* ban of indirect purchaser suits allowing suit by any person injured regardless of whether such injured person dealt directly or indirectly with the defendant." *Clayworth v. Pfizer 49 Cal 4th 758, 781 (2010)* In their class action herein

Plaintiffs have plead exclusive state court jurisdiction pursuant to this provision of California law.

3.    Plaintiffs also seek damages and injunctive relief under California's Unfair Competition Law, Cal Bus and Prof Code §17200 *et seq.*  Those claims have not been addressed in Defendants' removal papers.  Nonetheless, the UCL claims arise for the most part out of the same operative facts as are alleged under the Cartwright Act.

4.    Freed by California's legislature from under the onerous penumbra of *Illinois Brick's* federal Sherman Act standing restrictions in federal price-fixing cases, Plaintiffs meticulously included no federal question claims, included no non-citizens as plaintiffs, and named at least two California residents as Defendants.  (Visa Inc. is headquartered in San Francisco, and Bank of the West is chartered in California.)  First Amended Complaint pp 28-29 (¶¶ 56-60, 210) (hereinafter "Complaint").  Defendants removed the action to federal court alleging 1) federal diversity under CAFA (one Defendant and one Plaintiff alleged to be residents of different states), and 2) the allegation that a small number of foreign transactions engaged in by the named bank defendants triggers the automatic removal provision of the Federal Edge Act of 1919 as amended in 1933.  12 U.S.C. § 632, § 633.

5.    Defendants seek removal on dubious grounds.  Still, a grant of Federal Multi District Litigation (MDL) jurisdiction in the District Court would place this consumer class action into the already bloated *Payment Card Interchange Fee and Merchant Discount Antitrust Litigation* docket long pending in the Eastern District of New York, a docket overflowing with literally thousands of individual merchant "direct purchaser" opt out cases, together with the claims of millions of merchant class members seeking relief in the their

6

Sherman Act direct purchaser class action.  Failing remand, the District Court overseeing this California case will have to start anew in deciphering the liability and damages issues presented by *indirect* purchasers/consumers under a California state law at odds with federal law under which the *Merchant Discount Litigation* has dragged on for more than ten years. Difficult and complex "passing on" and related damage issues, Cartwright Act conspiracy law, causation issues, together with the state's Unfair Competition Law, will be before the court for the first time in a forum three-thousand miles from the parties' home state.

6.    The statutes pursuant to which the Defendants rely in their removal notices by their own terms nullify their claims of federal CAFA diversity and Edge Act jurisdiction. There is no basis for federal jurisdiction in this record.  The court should remand this case to California Superior Court.

## II.    PROCEDURAL BACKGROUND

7.    This action was filed on December 30, 2022, and amended on January 11, 2023 in Superior Court of the City of San Francisco, State of California.  The Visa Defendants filed Notice of Removal on January 30, 2023.  The Notice of Removal asserts that all named defendants approved of the removal.  On February 10, 2023, JPMDL entered its Conditional Transfer Order transferring this case to the Eastern District of New York, Judge Margo K. Brodie.  Thereafter, on February 15, 2023, Defendant and removing party herein, Visa (Visa Inc., Visa U.S.A. Inc., and Visa International Service Association) answered the Plaintiffs First Amended Complaint.

8.    Plaintiffs have thirty days from the date the Notice of Removal was filed to file their motion to remand.  Plaintiffs' remand motion filed herein is timely.

9.    On February 17, 2023, this court entered its Order, pursuant to stipulation

7

among all parties, which Order provides that Defendants shall have forty-five days from the date the Plaintiffs' Remand Motion is decided to answer or otherwise respond.

### III.    CAFA JURISDICTION

### A.    Defendants' Removal Notice Must Be Strictly Construed.

10.     The Class Action Fairness Act 28 U.S.C. 1332(d)(2)(A) (CAFA) confers jurisdiction over class actions upon the federal court if specified requirements are met. It provides exceptions to the grant of jurisdiction.  These defined exceptions are not jurisdictional but are firm direction to the federal court to refrain from its exercise of jurisdiction if the parameters in the exception are otherwise established. *Bridewell/Sledge v Blue Cross of Cal.,* 798 f.3d 923, (9th Cir., 2015.)

11.     The law is clear that the removal statute should be strictly construed in favor of remand and against removal.  *Harris v. Bankers Life and Cas. Co*, 425 F.3d 689, 698 (9th Cir. 2005).  The "strong presumption" against removal jurisdiction means that from the outset the defendant removing party always has the burden of establishing that removal is proper. *Nishimoto v. Federman-Bachrach & Assocs.*, 903 F.2d 709, 712 n. 3 (9th Cir. 1990); *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988).  Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance.  *Gaus v. Miles*, 980 F.2d 564, 566 (9th Cir. 1992).

### B.    Class Action Fairness Act Diversity Jurisdiction Is Not In Issue Here.

12.     Defendants' Notice of Removal alleges diversity jurisdiction under 28 U.S.C. 1332(d)(2)(A) (hereinafter CAFA).  They allege:

> "As explained below, this Court has original jurisdiction over this action on two grounds. First, this Court has original jurisdiction pursuant to 28 U.S.C. §

8

1332(d), as amended by the Class Action Fairness Act ("CAFA"), based upon the diversity-of-citizenship and amount-in-controversy requirements applicable to class actions. The diversity-of-citizenship requirement of 28 U.S.C. § 1332(d)(2)(A) is satisfied because at least one member of the putative Plaintiff class is a citizen of a State different from at least one defendant. The amount-in-controversy requirement of 28 U.S.C. § 1332(d)(2) is satisfied because the aggregate alleged claims of the individual members of the putative class exceed the sum or value of $5,000,000, exclusive of interest and costs. (Am. Compl. ¶ 56.) No exception to CAFA applies." Exhibit A. (Defs' Notice of Removal at pp 2.)

13.    Noteworthy is the last sentence stating that "[n]o exception applies." *Id*.

Plaintiffs have no quarrel with the Defendants' recitation of the diversity jurisdiction rule. But contrary to Defendants' ending caveat, this entire case is premised upon the "local controversy" *exception* to the rule upon which Defendants purport to rely above. Indeed, the facts supporting the CAFA exception upon which this action is so clearly founded are set out in the Amended Complaint and were well known to the Defendants as of the time of removal. The Amended Complaint allegations as contained in ¶¶ 52, 56-60, 210 are clear. The Amended Complaint boldly and often recites facts sufficient to bring Plaintiffs' claims within the ambit of the "local controversy" exception to CAFA's jurisdictional components.

## C.    CAFA's "Local Controversy" Exception Is Controlling Here.

14.    The facts alleged in the First Amended Complaint establish the elements of the "local controversy" exception set out in CAFA, 28 USC §1332 (d)(4)(A)(i).  It provides:

(4) A district court shall decline to exercise jurisdiction under paragraph (2)—
(A)
(i) over a class action in which—(I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;(II) at least 1 defendant is a defendant—(aa) from whom significant relief is sought by members of the plaintiff class;(bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and(cc) who is a citizen of the State in which the action was originally filed; and(III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and

(ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons; *or*
(B) two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." (Emphasis added.)

15.    Despite their having full notice of the facts in the Amended Complaint pertaining to the local controversy exception, Defendants provide minimal factual or case authority addressing this exception in their removal papers. Their sole reference to the local controversy relied upon by Plaintiffs is the following:

"The so-called "local controversy" exception does not apply because, among other things, Plaintiffs' allegations relate to the nationwide practices of payment card networks and national financial institutions affecting consumers throughout the country, 28 U.S.C. 1332(d)(4)(A)." Defs' Notice at 7:11-14.

16.    No authority is provided for the "nationwide practices" language, which in essence is Defendants' only possible basis for removal. This argument is derived from whole cloth. There is no such "nationwide practices" rule that purportedly negates the local controversy exception upon which Plaintiffs rely herein.

17.    Defendants correctly assert that it is Plaintiffs' burden to establish the elements of the exceptions to jurisdiction they allege. (They merely allege without authority that "no exception applies.") Nonetheless, it remains Plaintiffs' burden to establish the local controversy exception. To do so, the court need look no further than Plaintiffs' First Amended Complaint. (Exhibit A) It specifically addresses every element set out in the 28 USC §1332 (d)(4)(A)(i) that is required to embrace the exception. Those elements are:

**1.    Two-thirds of the Plaintiffs Must Be California Citizens.**

18.    The Plaintiffs are *all* California citizens. The Complaint by its terms provides:

"211.   Plaintiffs bring this action under The California Cartwright Act §16720, §16722, §16726, §16750 *et seq.*, and under California's Unfair Competition Law (UCL) Cal. Bus. & Prof. Code §17200 *et seq.*, on behalf of all members of the class, which is defined as follows:

All Visa and Mastercard cardholders who are California citizens, each of whom has made retail purchases of goods and services in California using a Visa or Mastercard credit or debit card during the period from at least January l, 2004, up to and including the date of filing this action…"

19.   The Complaint by definition is filed on behalf of California citizens only.

### 2.   At Least One Defendant is a Citizen of California.

20.   The Complaint alleges and the defendants admit:

"48.    Bank of the West is headquartered and bank chartered in California. Principal executive offices are located at 180 Montgomery Street, San Francisco, CA 94104, telephone: 415-765-4800."  Am. Compl: p 25:10-13.

21.   The Complaint further alleges, and Defendants admit, that Defendant

VISA's principal place of business is San Francisco, California.  Visa's Answer

provides:

"Visa admits that Visa Inc. is a publicly traded Delaware corporation, that its principal place of business is the San Francisco Bay Area, and its principal executive offices are located at One Market Plaza, San Francisco"  Visa defendants' Answer at ¶ 52.

### 3.   Damages Were Incurred Within the State of California.

22.   The Complaint seeks damages from the in-state Defendant(s). The complaint

alleges a conspiracy among *all* defendants and seeks monetary and injunctive relief both

individually and upon the theory of joint and several liability from all defendants.  All

named defendants are alleged to be equally and jointly liable as active participants in the

illegal trust and conspiracy. Am. Compl: e.g. p32: 1-24, ¶¶72, 73, 74, 210.

11

23.     The Complaint alleges that the damages were incurred in California by virtue of overpayment by California citizens for purchases made with credit/debit cards in California. Am. Compl: e.g. p32 ¶¶82-85, 210.

>    **4.    No Comparable Cases Have Been Filed Within Three Years Prior To The Filing Of This Action.**

24.     Plaintiffs are unaware of any class actions or comparable interchange fee case filed on behalf of consumers in the three years prior to the Complaint herein. Defendants would have direct knowledge of any such claims and had there been any, Defendants would surely have cited them in their moving papers, given their knowledge of the exception pleaded in this CAFA action.

25.     It must also be emphasized that VISA's reference to the CAFA local controversy exception is unsupported.  The *Singh* case (*Singh v. American Honda Finance Co.*, 925 F.3d 1053 (9th Cir. 2019), referenced by Defendants in passing, focused on CAFA's companion "home state" exception (28 USC §1332 (d)(4)(B)) that requires all "primary defendants" to be home state citizens.  That exception is not in issue here.  The local controversy provision (28 USC 1332 (d)(4)(A)(i)) upon which Plaintiffs rely contains no such requirement.

26.     All of the factual and legal components of the exception alleged have been met.  The local controversy exception to federal acceptance of jurisdiction attaches, and the court is required to decline jurisdiction.

## IV.    THE EDGE ACT

27.     The Edge Act of 1919 added a section 25(a) amendment to the 1913 Federal Reserve Act (12 U.S.C. 221 *et seq*.)  The purpose of the Edge Act, codified at 12 U.S.C. §§

12

611–631, was to enable national banks to "compete effectively with similar foreign-owned institutions in the United States and abroad." Section 25(a) authorized the Federal Reserve Board of Governors to charter corporations, which have come to be called Edge Act corporations, "for the purpose of engaging in international or foreign banking…" Each corporation was required to "enter into an agreement" with the Board of Governors as to the type of activities it would engage in and the manner in which it would conduct its operations. The stock of these corporations was made eligible for bank ownership. Before then, U.S. banks were not allowed to invest in foreign banks. Title 12 / Chapter 1 / Part 28 / Subpart A § 28.2 eCFR states: "(b) Edge corporation means a corporation that is organized under section 25A of the FRA, 12 U.S.C. 611 through 631." (12 CFR Part 28 -- International Banking Activities)

28.     An Agreement corporation is chartered by a state to engage in international banking; so named because the corporation enters into an agreement with the Federal Reserve Board that it will limit its activities to those permitted. eCFR § 28.2 Definitions states: "(a) Agreement corporation means a corporation having an agreement or undertaking with the Board of Governors of the Federal Reserve System (FRB) under section 25 of the Federal Reserve Act (FRA), 12 U.S.C. 601 through 604a."

**A.     Visa Has No Standing To Assert Removal Under the Edge Act.**

29.     It is the burden of the removing party to establish the elements of jurisdiction upon which jurisdiction is alleged to be predicated. *Laughlin v. Kmart Corp* 50 F.3d 871 (10th Cir. 1995) Visa is not a bank and does not claim to be an Edge Corporation. The banks named as defendants have not appeared in this action and are not parties to the Notice of Removal. The Notice contains no facts that could provide standing or other authority to

13

assert a basis for removal under the Edge Act on behalf of any named bank.  Indeed, neither Visa nor its counsel are in a position to assert the nature of the specific charters of any of the various bank defendants.

30.    And of importance is the established rule that the court may not rely on evidence extrinsic to the four corners of the removal notice.  See *Dexia v. Bear, Stearns & Co*. 945 F. Supp. 2d 426 (S.D.N.Y. 2013).  No bank defendant has come forward to affirmatively claim Edge Act status as a party or otherwise.

31.    In order to prevail in its removal efforts, Visa must put forth facts sufficient to justify removal in the record.  *Montefiore Med Center v.  Teamsters Local* 272  642 F.2d 321 (2d Cir. 2011)  Its unsupported claims that the eight bank defendants are somehow "corporation[s] organized under the laws of the United States" for purposes of the Edge Act are evasive and unsupported, and must be disregarded.

### B.    The Edge Act 12 U.S.C. §§632 and 633 Do Not Support Removal by Non Edge Act Banks.

#### 1.    An Edge Act Bank Must Be a Party.

32.    Defendant Visa seeks removal under the Edge Act, 12 U.S.C. §§ 611 *et seq*. The jurisdiction provision in issue, 12 U.S.C. §632, confers automatic removal jurisdiction upon the District Court if three conditions are met.  As determined with finality in *Am. Int'l Grp., Inc. v. Bank of Am. Corp.*, 712 F.3d 775, 782 (2d Cir. 2013) the conditions necessary for removal are clear and unequivocal.  The Second Circuit held:

> "Either way, § 632 provides that in order for its grant of federal jurisdiction and removability to apply, the suit must have a federally chartered corporation as a party, and the suit must arise out of an offshore banking or financial transaction of that federally chartered corporation." *Id.* At 782.

33.    The Court went on to hold that the "federally chartered corporation" referenced in the Act meant a separate bank chartered by the Federal Reserve as an Edge Act Bank or corporation.  In *Am. Int'l*, *supra*, the court explained:

"To achieve these goals, the Act authorized the creation of banking corporations chartered by the Federal Reserve Bank, so-called "Edge Act banks" or "Edge Act corporations," which could engage in offshore banking operations freed from regulatory barriers imposed by state banking commissioners that hindered other U.S. banks in efforts to compete with foreign banks."

Section 632, providing for federal court jurisdiction of certain suits to which these Edge Act banks were parties, was added fourteen years later, in 1933 (as part of the Glass–Steagall Act.). The apparent purpose of § 632 was to give Edge Act banks predictable uniformity of adjudication supervised in the federal courts, and thus better protection against potentially divergent and conflicting strictures imposed by banking authorities of 48 states." *Id.* at 779.

34.    § 632 requires an Edge Act bank to be named a party in the case being removed, and that the case must involve offshore transactions by the Edge bank.  No Edge Act bank is named as a defendant in this action.  Nor is offshore banking involved.  These conditions are not satisfied.  Attached hereto as Exhibit C is a list of each bank named herein together with its Edge Act affiliate(s) or subsidiaries.  The data was obtained from the Federal Reserve.  None of the Edge Act entities listed there are named as defendants in this case.

## 2.    The Bank Defendants Named Are Not Edge Act Banks.

35.    Defendant Visa's Notice of Removal is equivocal about the requirement that an Edge Act bank be a party.  Visa suggests but does not state that the eight named defendant banks are Edge Act banks.  There is nothing in the record that directly asserts Edge Act status to any named defendant bank.  Reference to the named bank defendants is set out in Def's Notice of Removal at paragraph 30:

15

"Eight of the named defendants—JPMorgan Chase Bank, N.A., Bank of America, N.A., Wells Fargo Bank, N.A., Citibank, N.A., U.S. Bank N.A., PNC Bank, N.A., Capital One, Bank, N.A., Capital One, N.A.—are "corporation[s] organized under the laws of the United States" for purposes of the Edge Act."

36.     The meaning and intent of the phrase, "*corporation[s] organized under the laws of the United States" for purposes of the Edge Act* is unclear.  The language implies that the named bank defendants are Edge Act banks chartered by the Federal Reserve under Regulation K.  They are not.  The Defendant Banks referred to in Def's Notice of Removal at paragraph 30 are domestic financial holding companies and national banks, not Edge or Agreement Corporations.  Edge Act banks are typically organizations formed by larger holding companies, often major domestic and international banks.  The purpose is to enable such entities to engage in the specified foreign banking related activities through Edge Act subsidiaries or affiliates as prescribed by the Federal Reserve Board of Governors.

### 3.     What Are Edge Act Banks?

37.     Edge Act corporations are defined under Regulation K of the Federal Reserve Act as follows:

> "Edge corporations are international banking and financial vehicles through which U.S. banking organizations offer international banking or other foreign financial services and through which they compete with similar foreign-owned institutions in the United States and abroad. The purposes of the Edge Act, which amended the Federal Reserve Act in 1919, include enabling U.S. banking organizations to compete effectively with foreign-owned institutions; providing the means to finance international trade, especially U.S. exports; fostering the participation of regional and smaller U.S. banks in providing international banking and financing services to U.S. business and agriculture; and stimulating competition in the provision of international banking and financing services throughout the United States." 12 CFR Parts 211 and 265 [Regulation K; Docket No. R-0994]

### 4.     What Types of Activities May an Edge or Agreement Corporation or Foreign Subsidiary of a U.S. Banking Organization Conduct in the United States?

16

38.    Below is an official interpretation of the Board of Governors of the Federal

Reserve System.  Source: 12 CFR 250.143 and 211.8(b). Posted: 3/31/2021

> An Edge or agreement corporation or foreign subsidiary of a U.S. banking organization may conduct activities in the United States that are incidental to its international or foreign business.

> Under the sixth paragraph of section 25A of the Federal Reserve Act (12 U.S.C. § 615(c)), an Edge corporation may, with the prior consent of the Board, purchase and hold stock of a corporation that is "not engaged in the general business of buying or selling goods, wares, merchandise or commodities in the United States, and not transacting any business in the United States except such as in the judgment of the Board . . . may be incidental to its international or foreign business." Similarly, under the eighth paragraph of the same section (12 U.S.C. § 616), an Edge corporation may not "carry on any part of its business in the United States except such as in the judgment of the Board . . . may be incidental to its international or foreign business." Pursuant to the third paragraph of section 25 of the Federal Reserve Act (12 U.S.C. § 601) and paragraph 20 of section 9 of the Federal Reserve Act (12 U.S.C. § 335), a member bank may acquire and hold, directly or indirectly, stock or other evidences of ownership in a foreign bank as long as such foreign bank is "not engaged, directly or indirectly, in any activity in the United States except as, in the judgment of the Board . . . shall be incidental to the international or foreign business of such foreign bank." Finally, section 4(c)(13) of the BHC Act exempts from the nonbanking prohibitions of section 4 of the BHC Act "shares of, or activities conducted by, any company which does no business in the United States except as an incident to its international or foreign business." 12 U.S.C. § 1843(c)(13).

> As the Board has indicated, the slight wording differences between the quoted portions of the above statutes were not intended by Congress to bear any meaningful significance. Accordingly, the Board has interpreted these provisions in the past as being synonymous.

> The scope of activities that are considered incidental to international or foreign business are set forth in Regulation K. 12 CFR 211.6.

### 5.    The "federally chartered corporation" Language in the Act Refers to Edge Act Banks.

39.    It is important to emphasize that the Edge Act reference to "federally chartered

corporation" refers specifically and exclusively to chartered Edge Act banks. *Am. Int'l Grp.,*

*Inc. v. Bank of Am. Corp.*, 712 F.3d 775, 782 (2d Cir. 2013)  Visa claims to have evidence of

Visa-branded payment-card transactions at merchants located in California wherein merchant

17

acquirers were located outside the United States, citing processing activity by Deutsche Bank AG and Worldpay (UK) pg. 10, para 36.  This activity is alleged to trigger the removal provision of § 632.  See Notice at ¶¶ 31-32.  In support, Visa defendants cite a number of pre-2013 district court cases, the vitality of which was impacted by *Am. Int'l Grp., Inc.*, *supra,* discussed herein above.  Visa's assertions regarding foreign banking activity occurring in the credit card processing business is misplaced.

40.     Visa contends that some degree of the foreign banking requirement is evidenced by its consultant's analysis of a small number of payment-card transactions at merchant locations in California that involved issuers located in California and acquirers located out-of-country, namely Deutsche Bank AG and Worldpay (UK).  [Harvey Decl. ¶¶ 5-6.]

41.     Deutsche Bank launched its US intermediate holding company, DB USA Corporation, on July 1, 2016, under which most of its US-based operations were consolidated as required by the Dodd-Frank Act.  A foreign banking organization with $50 billion or more in total U.S. non-branch assets as of June 30, 2015, was required to establish a U.S. intermediate holding company and transfer its ownership interest in the substantial majority of its U.S. subsidiaries to the U.S. intermediate holding company by July 1, 2016.  Deutsche Bank Trust Company Americas is a State Member Bank located in New York, N.Y.  https://www.federalreserve.gov/supervisionreg/foreign-banking-organizations.htm

42.     Visa retained Mr. R. Garrison Harvey to analyze one month's credit debit card records from a number of California Credit Union cardholders.  He concluded that Deutsche Bank AG, Worldpay (UK) and other merchant acquirers outside the United States processed

18

credit cards issued in California and used by California cardholders at merchant locations in California. But there is no mention or reference to any Edge Act banks in his Declaration. See Exhibit F to the Notice of Removal.

43.    Mr. Harvey places great reliance on the participation of Deutsche Bank AG in the *foreign* credit card processing he observed. He mentions other unnamed bank participation at various levels in these transactions but provides no direct information as to the identity of any of the actors. We are provided no knowledge as to whether Deutsche Bank is a foreign or domestic entity much less whether it or any of the other banking entities alleged to be participants in the activity are Edge Act banks.

44.    The work performed and conclusions reached by Visa's consultant shed no light on the controlling issues here: Was any Edge Act bank engaged in credit/debit activity during the time period of the conduct complained of? Or, did any of the conduct complained of by the plaintiffs arise out of any participation by an Edge Act bank in such conduct? The law and the facts say the answer to both is "No."

**C.    There Is No Evidence of Any Edge Act Bank Participation in This Litigation.**

45.    Defendant VISA asks the court to assume that the bank defendants herein are Edge Act banks. No direct evidence is provided. Eight major banks are defendants herein. They are alleged to have agreed to the removal. Why is there no direct evidence from a bank as to whether any Edge Act bank is named in the action or participated in the conduct that gave rise to the action? The law is clear that Edge Act banks are subsidiaries of member banks, and that that the permissible activities that the Edge entities can engage in do not include domestic merchant processing activities.. Nor are they alleged to have any role in the

19

conduct complained of in this case.

## V.    CONCLUSION

46.    Defendant VISA has failed to demonstrate the participation of any Edge Act Bank in the matters at issue in this case.  Its Removal is unsupported, and this case should be remanded to the Superior Court of California – County of San Francisco.

Respectfully Submitted,

ALIOTO LAW FIRM

Dated: March 1, 2023                            by:

/s/ Jeffery K. Perkins

_____
Jeffery K. Perkins
Attorneys for Plaintiffs

# EXHIBIT A

# Defendants' Notice of Removal with Attached First Amended Complaint and Complaint

# EXHIBIT C

## DEFENDANTS' EDGE SUBSIDIARIES