UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

JOHN PALLADINO, GARIB KARAPETYAN, STEVE PALLADINO, AND JOHN NYPL, *on behalf of themselves and all others similarly situated*,

                Plaintiffs,

                v.

JP MORGAN CHASE & CO., JP MORGAN BANK, N.A., BANK OF AMERICA CORPORATION, BANK OF AMERICA, NATIONAL ASSOCIATION, BANK OF AMERICA N.A., WELLS FARGO & COMPANY, WELLS FARGO BANK, N.A., CITIGROUP INC, CITIBANK, N.A., CITIBANK, N.A. (NATIONAL ASSOCIATION), U.S. BANKCORP, US bancorp, U.S. BANK NATIONAL ASSOCIATION, PNC FINANCIAL SERVICES GROUP, INC., PNC, PNC BANK NATIONAL ASSOCIATION, CAPITAL ONE, F.S.B., CAPITAL ONE FINANCIAL CORPORATION, CAPITAL ONE BANK (USA), NATIONAL ASSOCIATION, CAPITAL ONE NATIONAL ASSOCIATION, BANK OF THE WEST, VISA INC., VISA U.S.A. INC., VISA INTERNATIONAL SERVICE ASSOCIATION, MASTERCARD INCORPORATED, MASTERCARD,

                Defendants.

**MEMORANDUM & ORDER**
23-CV-1215 (MKB)

---------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

      Plaintiffs John Palladino, Garib Karapetyan, Steve Palladino and John Nypl commenced this putative antitrust class action on December 30, 2022, in the Superior Court of the City of San Francisco, State of California, against Defendants Visa and MasterCard and banks that issue Visa and MasterCard payment cards that consumers use to purchase goods and services. (*See*

Compl., annexed to Notice of Removal as Exhibit A, Docket Entry No. 1-1.) On January 11, 2023, Plaintiffs filed an amended Complaint against the same defendants. (*See* First Am. Compl. ("FAC"), annexed to Notice of Removal as Ex. C, Docket Entry No. 1-3.) Plaintiffs allege on behalf of a putative class of Visa or MasterCard cardholders who are citizens of California and have made retail purchasers in California, that Defendants conspired to fix the price of credit/debit-card interchange fees charged to consumers' credit/debit-card accounts and fail to disclose the fees charged, in violation of California's Cartwright Act, California Business and Professions Code §§ 16700, 16750, and California's Unfair Competition Law, California Business and Professions Code § 17200 *et seq.* (*Id.* at Introduction, 77–95.) Plaintiffs are seeking monetary damages, disgorgement, and injunctive relief. (*Id.* at 95–96.)

On January 30, 2023, Defendants timely removed the action to the Northern District of California.[1] (Notice of Removal, Docket Entry No. 1). Plaintiffs now move to remand the action to state court and Defendants oppose Plaintiffs' motion.[2] For the reasons set forth below, the Court denies Plaintiffs' motion.

**I. Background**

The putative class consists of California citizens, who are Visa or MasterCard cardholders and who have used a Visa or MasterCard payment-card to make a purchase

---

[1] On February 15, 2023, the Clerk of Court for the Northern District of California entered a Transfer Order from the United States Judicial Panel on Multidistrict Litigation, transferring this case to the Eastern District of New York for consolidation with *In Re Payment Card Interchange Fee* and *Merchant Discount Antitrust Litigation*, No. 05-MD-1720. (Transfer Order, Docket Entry No. 9.)

[2] (Pls.' Mot. to Remand to State Court ("Pls.' Mot."), Docket Entry Nos. 14, 15; Pls.' Mem. in Supp. of Pls.' Mot. ("Pls.' Mem."), Docket Entry No. 15-1; Reply in Supp. of Pls.' Mot. ("Pls.' Reply"), Docket Entry No. 36.); (Defs.' Opp'n to Pls.' Mot. ("Defs.' Opp'n"), Docket Entry No. 28.)

transaction from at least January 1, 2004, up until the filing of the action. (FAC ¶¶ 14–15, 211.) Defendants are the Visa and MasterCard payment networks and member banks that issue Visa or MasterCard cards to consumers and also acquire and process the sales transactions. (*Id.* ¶ 11.)

Plaintiffs allege that Defendants conspired to fix the price of credit/debit-card fees charged when a consumer uses a payment card to purchase a retail good or a service (the "interchange fees"), harming competition and resulting in increased prices. (*Id.* at Introduction, ¶¶ 62–65, 72–80, 89–98, 124, 127–40, 147–51, 211.) Plaintiffs contend that they and the putative class members paid, without their knowledge, those interchange fees as direct and indirect purchasers and assert violations of the California Cartwright Act, as well as the California Unfair Competition Law. (*Id.* ¶¶ 10, 13, 56–58, 81–83, 120, 219–77.) "Freed by California's legislature from under the onerous penumbra of *Illinois Brick*'s federal Sherman Act standing restrictions in federal price-fixing cases," Plaintiffs filed the Complaint in state court and "meticulously included no federal question claims, included no non-citizens as plaintiffs, and named at least two California residents as Defendants." (Pls.' Mem. ¶ 4.)

On January 30, 2023, Defendants removed the action to federal court, alleging: (1) federal jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), and (2) automatic removal pursuant to the Federal Edge Act of 1919 as amended in 1933, 12 U.S.C. §§ 632, 633. (Notice of Removal ¶¶ 3, 4, 17, 28.) On February 15, 2023, the Judicial Panel on Multidistrict Litigation transferred the matter from the Northern District of New York to the Eastern District of New York to become part of *In Re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, No. 05-MD-1720, on the basis that the action "involve[s] questions of fact that are common to actions previously transferred to the Eastern District of New York and assigned to Judge Brodie." (Transfer Order, Docket Entry No. 9.) On

February 15, 2023, Visa Inc., Visa International Service Association and Visa U.S.A. Inc. answered the FAC. (Answer, Docket Entry No. 11.)

Plaintiffs now argue that there is no basis for federal jurisdiction and that the Court should remand the case to state court. (Pls.' Mem. 7.)

## II. Discussion

### a. Standard of review

A defendant may remove a civil action brought in state court to a federal court of original jurisdiction. 28 U.S.C. § 1441(a). A notice of removal must allege a proper basis for removal under 28 U.S.C. §§ 1441–1445. *See Agyin v. Razmzan*, 986 F.3d 168, 181 (2d Cir. 2021) ("[In] determining whether jurisdiction is proper, we look only to the jurisdictional facts alleged in the Notices of Removal." (quoting *California v. Atl. Richfield Co. (In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.)*, 488 F.3d 112, 124 (2d Cir. 2007))); *New York v. Dickerson*, No. 20-CR-208, 2020 WL 3263771, at *1 (E.D.N.Y. June 16, 2020) ("An effective petition for the removal of a state action to federal court must allege a proper basis for the removal under sections 1441 through 1445 of Title 28." (quoting *Negron v. New York*, No. 02-CV-1688, 2002 WL 1268001, at *1 (E.D.N.Y. Apr. 1, 2002))). The party asserting jurisdiction bears the burden of proving that jurisdiction and procedural requirements are met. *Cal. Pub. Emps.' Ret. Sys. v. WorldCom, Inc.*, 368 F.3d 86, 100 (2d Cir. 2004) ("Where, as here, jurisdiction is asserted by a defendant in a removal petition, it follows that the defendant has the burden of establishing that removal is proper."); *Mehlenbacher v. Akzo Nobel Salt, Inc.*, 216 F.3d 291, 296 (2d Cir. 2000); *Bankhead v. New York*, No. 13-CV-3377, 2013 WL 6145776, at *1 (E.D.N.Y. Nov. 21, 2013). A district court must remand an action to state court "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c); *Vossbrinck v.*

4

*Accredited Home Lenders, Inc.*, 773 F.3d 423, 427 (2d Cir. 2014); *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 356 (2d Cir. 2011); *see also Kenmore Assocs., L.P. v. Burke*, 367 F. App'x 168, 169 (2d Cir. 2010).

### b. This Court has jurisdiction under CAFA

Plaintiffs argue that that there is a "strong presumption" against removal, and that the Court should remand under CAFA's "local controversy" exception. (Pls.' Mem. 9.) They contend that the facts as established in the FAC satisfy the elements of CAFA's local controversy exception.[3] (*Id.* at 9–12.) First, at least two-thirds of Plaintiffs are California citizens (the class is defined as California citizens, who have made purchases in California using a Visa or Mastercard). (*Id.* at 10–11.) Second, at least one Defendant is a California citizen (Bank of the West and Visa Inc. have their principal places of business and/or headquarters in California). (*Id.* at 11.) Third, damages were incurred in California. (*Id.* at 11–12.) Fourth, no similar cases have been filed within three years prior to the filing of this action. (*Id.* at 12.)

Defendants contend that the Court has original jurisdiction under 28 U.S.C. § 1332(d), as amended by CAFA, "because Plaintiffs allege a putative class consisting of more than 100 members, the matter in controversy exceeds $5 million and at least one member of the putative class is a citizen of a different State from at least one named Defendant." (Defs.' Opp'n 2.) Further, they argue that, contrary to Plaintiffs' argument, there is no "strong presumption" against removal in cases invoking CAFA, but instead "'a strong preference' that interstate class actions should be heard in a federal court if properly removed." (*Id.* at 5 (quoting citation

---

[3] Plaintiffs explain that having been "[f]reed by California's legislature from under the onerous penumbra of *Illinois Brick*'s federal Sherman Act standing restrictions in federal price-fixing cases, Plaintiffs meticulously included no federal question claims, included no non-citizens as plaintiffs, and named at least two California residents as Defendants[,]" in an effort to keep the case in state court. (Pls.' Mem. 6).

5

omitted)).) In addition, Defendants argue that the local controversy exception under CAFA does not apply, as it is narrow and applies only to "purely local disputes." (*Id.* at 6–7.) Specifically, the "local controversy" exception does not apply because Plaintiffs cannot satisfy their burden as to the third element — that the principal injuries resulting from the alleged or related conduct were incurred in California — or the fourth element — that no other class action asserting similar factual allegations was filed in the three years preceding the filing of the instant action. (*Id.* at 2, 7.) Defendants argue that Plaintiffs cannot demonstrate that the principal injuries alleged occurred in California, given that Plaintiffs challenge nationwide practices of Visa and Mastercard and national financial institutions affecting consumers all over the country. (*Id.* at 2, 7–12.) In support of this argument, Defendants argue that the law and legislative history is clear that this element turns on where all those affected by the conduct at issue were injured, not just on where the putative class members were injured. (*Id.* at 8–9.) Defendants also argue that Plaintiffs cannot prove that no similar class action was filed in the three years preceding the filing of the instant action because three other class actions asserting "similar factual allegations" were filed in the three years preceding the commencement of this action. (*Id.* at 2, 7, 12–14.) Defendants argue that in each of those three prior cases, the plaintiffs brought indirect purchaser claims under California law and alleged that Visa and Mastercard harmed competition by conspiring with member banks to set supracompetitive default interchange rates. (*Id.* at 12–13.) They further argue that it does not matter whether the putative classes or the legal theories differ, but only whether the parties in the class actions make similar factual allegations. (*Id.* at 12–14.)

CAFA "dramatically expanded federal jurisdiction over class actions," with the "'primary objective' of 'ensuring Federal court consideration of interstate [class action] cases of national importance.'" *F5 Cap. v. Pappas*, 856 F.3d 61, 81 (2d Cir. 2017) (first quoting *Greenwich Fin.*

6

*Servs. Distressed Mortg. Fund 3 LLC v. Countrywide Fin. Corp.*, 603 F.3d 23, 32 (2d Cir. 2010); then quoting *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588 (2013)) (alterations in original); *see also id.* at 81 (quoting *Freeman v. Blue Ridge Paper Prods., Inc.*, 551 F.3d 405, 407 (6th Cir. 2008) (citing approvingly law finding that "CAFA was clearly designed to prevent plaintiffs from artificially structuring their suits to avoid federal jurisdiction"). Because Congress enacted CAFA "to facilitate adjudication of certain class actions in federal court," no antiremoval presumption attends cases invoking CAFA. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014) (citations omitted); *Zanotti v. Invention Submission Corp.*, No. 18-CV-5893, 2020 WL 2857304, at *4 (S.D.N.Y. June 2, 2020) (same). Instead, Congress has advised that CAFA's provisions should be read "broadly," with a "strong preference" for properly removed interstate class actions to be heard in federal court. *Dart Cherokee Basin Operating Co., LLC*, 574 U.S. at 89 (quoting S. Rep. No. 109-04, at 43 (2005)).

CAFA provides federal district courts "with 'original jurisdiction' to hear a 'class action' if the class has more than 100 members, the parties are minimally diverse, and the 'matter in controversy exceeds the sum or value of $5,000,000.'" *Standard Fire Ins. Co.,* 562 U.S. at 592; *Cutrone v. Mortg. Elec. Registration Sys. Inc.*, 749 F.3d 137, 142 (2d Cir. 2014) (same); *see also Estate of Pew v. Cardarelli*, 527 F.3d 25, 30 (2d Cir. 2008) ("CAFA amends the diversity jurisdiction statute by adding § 1332(d), which confers original federal jurisdiction over any class action with minimal diversity (*e.g.*, where at least one plaintiff and one defendant are citizens of different states) and an aggregate amount in controversy of at least $5 million (exclusive of interest and costs).").

CAFA provides three exceptions to original jurisdiction: the so-called "local controversy," "home state" controversy, and "interests of justice" exceptions. *Kurovskaya v.*

7

*Project O.H.R., Inc.*, 251 F. Supp. 3d 699, 701–02 (S.D.N.Y. 2017) (quoting 28 U.S.C. § 1332(d)); *Mattera v. Clear Channel Commc'ns, Inc.*, 239 F.R.D. 70, 77 (S.D.N.Y. 2006); *see also Gold v. New York Life Ins.*, 730 F.3d 17, 141–42 (2d Cir. 2013) (discussing the home state and local controversy exceptions).  The local controversy and home state exceptions to CAFA jurisdiction mandate that district courts decline jurisdiction if certain elements are present that identify a case with primarily in-state class members seeking relief principally for in-state harm by citizens of the same state.  *Mattera*, 239 F.R.D. at 77 (citing 28 U.S.C. § 1332(d)(4) and (d)(3)); *see also Hart v. Rick's N.Y. Cabaret Int'l, Inc.*, 967 F. Supp. 2d 955, 962 (S.D.N.Y. 2014) ("The mandatory exceptions are designed to draw a delicate balance between making a federal forum available to genuinely national litigation and allowing the state courts to retain cases when the controversy is strongly linked to that state. . . . [T]hese exceptions are intended to keep purely local matters and issues of particular state concern in the state courts." (internal quotation marks and citation omitted)).  A district court may also, in the "interest of justice," decline jurisdiction after considering a set of factors "designed to address similar concerns regarding truly local controversies in cases where neither mandatory exception applies." *Sorrentino v. ASN Roosevelt Ctr., LLC*, 588 F. Supp. 2d 350, 355 (E.D.N.Y. 2008); *see also Mattera*, 239 F.R.D. at 77 (listing the statutory factors); *Hart*, 967 F. Supp. 2d at 962–69 (finding that neither mandatory exception applied to class claims asserted under New York state law, and declining to invoke the interest of justice exception).

The local controversy exception applies if: (1) more than two-thirds of putative class members are citizens of the state in which the action was filed; (2) at least one defendant is a citizen of the state in which the action was filed and that defendant is a defendant from whom "significant relief" is sought by members of the class and whose conduct forms a "significant

basis" of the claims; (3) the "principal injuries resulting from the alleged conduct or any related conduct of each defendant" were incurred in the state in which the action was filed; and (4) no other class action asserting the same or similar factual allegations against any of the defendants have been filed in the last three years. 28 U.S.C. § 1332(d)(4)(A); *Wurtz v. Rawlings Co., LLC*, 761 F.3d 232, 240 (2d Cir. 2014) (quoting 28 U.S.C. § 1332(d)); *Carter v. Ciox Health, LLC*, 260 F. Supp. 3d 277, 282 (W.D.N.Y. May 30, 2017) (quoting 28 U.S.C. § 1332(d)(4)(A)). Although the removing party bears the initial burden of establishing the jurisdictional requirement under CAFA, *Zanotti*, 2020 WL 2857334, at *4 (citing *Blockbuster v. Galeno*, 472 F.3d 53, 58 (2d Cir. 2006)), almost every court that has addressed this question agrees that the party seeking to invoke the CAFA exception must prove that the exception applies by a preponderance of the evidence, *see Carter*, 260 F. Supp. 3d at 283 (collecting cases); *see also Ramirez v. Oscar De La Renta, LLC*, No. 16-CV-7855, 2017 WL 2062960, at *7 (S.D.N.Y. May 12, 2017) (explaining that although the Second Circuit has yet to decide this issue, the "emerging consensus" is that plaintiff must prove by a preponderance of the evidence that the CAFA exception applies).

There is no dispute that the Court has jurisdiction under CAFA, and the only dispute is as to whether CAFA's local controversy exception applies, therefore, the Court limits its discussion to the disputed elements of the local controversy exception. For the reasons explained below, the Court finds that Plaintiffs do not satisfy either of the two contested elements and, as a result, the local controversy exception does not apply.

    **i. Plaintiff has not shown that the principal injuries resulting from the alleged conduct were incurred in California**

Plaintiffs contend that they have established that the principal injuries occurred in California. (Pls.' Reply 7–10.) They argue that the statutory provision is clear and unambiguous

9

and that Defendants "import legislative history and cases relying on it to 'interpret' a statute which needs no interpretation." (*Id.* at 9.) Plaintiffs argue that contrary to Defendants' argument, "[n]othing in the statute refers to injuries resulting from similar conduct or injury occurring nationally or in other states," and accordingly Plaintiffs are only required to show that they incurred their principal injuries in California, not that no other persons suffered injuries of a similar nature in other states. (*Id.*) They contend that according to the Complaint, the principal injuries alleged were incurred in California because the class was limited to California citizens who made purchases in California. (*Id.* at 9.)

Defendants argue that the law and legislative history is clear that the principal injuries provision turns on where all those affected by the conduct at issue were injured, not just on where the putative class members were injured. (Defs.' Opp'n 8–9.) Defendants contend that Plaintiffs cannot satisfy the principal injuries provision because Plaintiffs challenge nationwide practices of Visa and Mastercard and national financial institutions affecting consumers all over the country, and therefore the principal injuries occur nationwide, rather than only in California. (*Id.* at 2, 7–12.)

As mentioned above, the local controversy exception does not apply unless the "principal injuries resulting from the alleged conduct or any related conduct of each defendant" were incurred in the state in which the action was filed. 28 U.S.C. § 1332(d)(4)(A); S. Rep. No. 109–14, at 40 (explaining that "all or almost all of the damage" caused by the defendants' conduct must have occurred in the state in which the suit was brought).

As Defendants argue, some courts have looked to the legislative history in interpreting this provision to mean that the principal injuries must be limited to the particular state in which the action was filed for the exception to apply. *See Brook v. UnitedHealth Group Inc.*, No. 06-

10

CV-12954, 2007 WL 2827808, at *4 (S.D.N.Y. Sept. 26, 2007) (explaining that the principal injuries must be "limited to a particular state" (quoting *Mattera*, 239 F.R.D. at 80); *R.A. by and Through Altes v. Amazon.com, Inc.*, 406 F. Supp. 3d 827, 835 (C.D. Cal. 2019) (holding that the injuries must be localized); *Beasley v. Lucky Stores, Inc.*, 379 F. Supp. 3d 1039, 1044 (N.D. Cal. 2019) (same);[4] *see also* S. Rep. No. 109–14, at 40 (explaining that "[t]he purpose of this criterion is to ensure that this exception is used only where the impact of the misconduct alleged by the purported class is localized"). Accordingly, these courts have found that if persons around the country could allege similar injuries based on the defendants' conduct, the exception does not apply, even if the putative class is limited to persons located in a certain state. *Brook*, 2007 WL 2827808, at *4 (finding that the exception did not apply because "the adverse effects suffered, as a result of defendants' culpable conduct, was not limited to the named New York plaintiffs but also included health care providers in several others states"); *R.A. by and Through Altes*, 406 F. Supp. 3d at 835 (explaining that even though the proposed class was comprised of only California minors, the plaintiff failed to meet the principal injury requirement because the defendant engaged in the at-issue conduct nationwide); *Beasley*, 379 F. Supp. 3d at 1044 (finding that because the product was distributed nationwide, not only or principally in California, the principal injuries were not local); S. Rep. No. 109–14, at 40 ("[I]f the defendants engaged in conduct that could be alleged to have injured consumers throughout the country or broadly

---

[4] These courts appear to be considering the legislative history to interpret the phrase "principal injuries" because they deem the term facially ambiguous. *See Kearns v. Ford Motor Co.*, No. 05-CV-5644, 2005 WL 3967998, at *12 (C.D. Cal. Nov. 21, 2005) ("[T]he Court must still determine the proper interpretation of 'principal injuries.' Because the term is facially ambiguous and there is no clearly applicable meaning derivable from the case law, it is, again, appropriate to look at the legislative history, particularly the Committee Report, to determine what Congress intended by this phrase." (citation omitted)); *see also Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 116 (2d Cir. 2007) (explaining that where a statute's "language is unambiguous, no further inquiry is necessary" to interpret the statute).

throughout several state, the case would not qualify for this exception, even if it were brought as a single-state class action.").

However, the only circuit court to have considered this question has interpreted the provision differently, relying solely on the statute's plain language and finding it to be unambiguous. *See Kaufman v. Allstate New Jersey Ins. Co.*, 561 F.3d 144, 158 (3d Cir. 2009); *see also Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 116 (2d Cir. 2007) (explaining that where a statute's "language is unambiguous, no further inquiry is necessary"); *Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699, 705–06 (2d Cir. 2019) (explaining that courts must adhere to this principle in determining whether or not to exercise jurisdiction). The Third Circuit found that, in light of the disjunctive "or" included in the statute, the statute was clear that the principal injuries requirement was satisfied "either 1) when principal injuries resulting from the alleged conduct of each defendant were incurred in the state in which the action was originally filed, 'or' 2) when principal injuries resulting from any related conduct of each defendant were incurred in that state." *Kaufman* , 561 F.3d at 158 (declining to look further than the plain meaning of the statute); *see also Simmons v. Ambit Energy Holdings, LLC*, No. 13-CV-6240, 2014 WL 5026252, at *4 (S.D.N.Y. Sept. 30, 2014) (adopting the Third Circuit's interpretation) (quoting *Kaufman*, 561 F.3d at 158)). The court explained in *Kaufman* that even though the defendants engaged in related conduct in other states — issuing insurance policies providing the same coverage — the statute does not require that the principal injuries resulting from both the alleged conduct and the related conduct be localized. *Kaufman*, 561 F.3d at 158. The *Kaufman* court found that the plaintiffs had shown that the principal injuries resulting from the alleged conduct were incurred in the state in which the action was filed because the alleged conduct

12

consisted of the failure to insure or pay for diminished value claims in New Jersey, and the putative class was comprised of persons with insurance policies in New Jersey. *Id.*

One court in this circuit and courts in other circuits have followed the reasoning of the Third Circuit. *See Simmons*, 2014 WL 5026252, at *4 (quoting *Kaufman*, 561 F.3d at 158) (finding the principal injuries were incurred in New York where the complaint sought relief "under *New York* law, for [the defendant's] New York customers who were enrolled in and allegedly deceived by the purported savings of the *New York* Guaranteed Savings Plans and the *New York* Select Variable Plan" and where, "[b]y definition, every one of those customers received service *in* New York (and nearly every one presumably also lives in New York)); *Premo v. Fam. Dollar Stores of Mass., Inc.*, No. 13-11279, 2014 WL 1330911, at *5 (D. Mass. Mar. 28, 2014) ("In his complaint, Plaintiff alleges that Family Dollar MA has violated the Massachusetts Overtime Law by wrongfully classifying [him] and other similarly situated persons who worked at Family Dollar Store locations in Massachusetts as 'store managers' exempt from overtime. Consequently, I find that 'princip[al] injury' alleged took place in Massachusetts."); *Johnson v. MFA Petrol. Co.*, No. 11-CV-0981, 2013 WL 3448075, at *7 (W.D. Mo. July 9, 2013) ("The alleged wrongful conduct in the present case occurred only in Missouri under the Missouri Merchandising Practices Act, involved only Missouri citizens, and any damages resulting from this conduct occurred only in Missouri. Whether [d]efendants' related use of single hose blender pumps in other states violates those states' respective laws . . . does not affect whether [p]laintiff has met the 'principal injuries' requirement of the local controversy exception."); *but see Winn v. Mondelez Int'l*, 17-CV-2524, 2018 WL 3151774, at *4–5 (N.D. Cal. June 28, 2018) (rejecting the Third Circuit's analysis and finding the local controversy exception does not apply where the alleged harm is national in scope).

13

However, the facts of *Kaufman* and the cases adopting the court's reasoning in *Kaufman* somewhat differ from the facts of the case at hand. In at least some of those cases, the plaintiffs were complaining of conduct, or agreements, that were specific to one state — in at least some sense — and it was clear that the principal injuries resulting from the defendants' alleged conduct were incurred in one state, even if the defendants were also engaging in related conduct in another state. *See Simmons*, 2014 WL 5026252, at *4 (clarifying that while the complaint alleged that the defendants engaged in similar, if not identical, conduct in another state, any harm caused by the defendants in the other state were the "product of separate agreements specific to [that State]" and finding that the complaint did not allege a cognizable injury to anyone outside of the state); *see also Kaufman*, 561 F.3d at 158 (explaining that even if the defendants issued insurance policies in other states with the same coverage, the allegations concerned the defendants' New Jersey insurance policies and involved the defendants' failure to insure or pay claims in New Jersey). Therefore, even though the defendants may have been engaged in related conduct resulting in injuries in another state, the plaintiffs had satisfied their burden because they could do so by either showing that the alleged conduct resulted in principal injuries in the state *or* by demonstrating that related conduct resulted in principal injuries in the state. *See Kaufman*, 561 F.3d at 158; *Simmons*, 2014 WL 5026252, at *4.

By contrast, Plaintiffs are complaining about credit-card and debit-card rules that are implemented on a nationwide basis, not conduct or agreements specific to the State of California. (*See* Compl.); *c.f. Moore v. IOD Inc.*, No. 14-CV-8406, 2016 WL 8941200, at *7 (S.D.N.Y. Mar. 24, 2016) (finding the local controversy exception applied where the complaint did not allege facts from which the court could find the defendants caused injury to anyone outside of New York); *Simmons*, 2014 WL 5026252, at *4 (same). Even if the Court were to interpret the statute

14

as the Third Circuit did in *Kaufman*, it is unclear that the principal injuries resulting from each of the defendant's conduct were incurred in the State of California.[5] Therefore, the Court cannot find, by a preponderance of the evidence, that Plaintiffs have shown that the principal injuries from the alleged conduct, or related conduct, were incurred in California.

> ii. **Other similar class actions were filed in three years preceding the filing of the instant action**

Plaintiffs argue that no similar cases have been filed in the three years preceding the filing of the Complaint. (Pls.' Reply 12.) In support, they contend that the other class actions identified by Defendants are dissimilar because those cases were filed by merchants, rather than consumers. (*Id.*) They explain that they seek redress for overcharges paid for products and services, rather than reimbursement for inflated interchange fees. (*Id.* at 12–13.) They also argue that their cases differ because consumers are adverse to the merchants — as the merchants are co-conspirators liable under the Cartwright Act — and that the interchange fees were kept

---

[5] Although Plaintiffs rely on a Ninth Circuit case in support of their argument, that case is distinguishable. (*See* Pls.' Reply 11 (citing *Broadway Grill, Inc. v. Visa Inc.*, 856 F.3d 1274 (9th Cir. 2017)).) In that case, the district court initially denied the motion to remand because the plaintiffs did not satisfy the home exception requirement to CAFA jurisdiction (as the plaintiff had not shown that two-thirds of the putative class were California citizens), *Broadway Grill, Inc. v. Visa Inc.*, No. 16-CV-04040, 2016 WL 4498822, at *5 (N.D. Cal. Aug. 29, 2016), and later, after an amended complaint was filed, granted the motion to remand because the defendants were unable to satisfy their initial burden under CAFA, *Broadway Grill, Inc. v. Visa Inc.*, No. 16-CV-04040, 2016 WL 5390415, at *3 (N.D. Cal. Sept. 27, 2016), *rev'd*, 856 F.3d 1274 (9th Cir. 2017). The Ninth Circuit reversed the second ruling on the basis that the plaintiff could not amend the complaint to avoid CAFA jurisdiction and obtain a remand because the relevant jurisdictional facts were those included in the original complaint. *Broadway Grill, Inc. v. Visa Inc.*, 856 F.3d 1274, 1279 (9th Cir. 2017). Neither the district court nor the Ninth Circuit found or suggested that the principal injuries provision of the local controversy exception to CAFA was satisfied. In fact, after the Ninth Circuit issued its order, the case was removed to federal court and transferred to this Court as part of the Multi-District Litigation *In Re Payment Exchange*, No. 05-MD-01720. *See* Order Transferring Case, *Broadway Grill v. Visa Inc.*, No. 17-CV-04362 (E.D.N.Y. July 24, 2017), Docket Entry No. 51.

secret from consumers, but not the merchants. (*Id.*) Plaintiffs contend that the provision — "similar factual allegations against any of the defendants on behalf of the same or other persons" — cannot be read to include "other persons" directly adverse to Plaintiffs. (*Id.* at 14.)

Defendants contend that Plaintiffs cannot satisfy the local controversy exception because other class actions asserting similar factual allegations have been filed in the three years prior to the filing of the instant action. (Defs.' Opp'n 12 (citing Compl., *Old Jericho Enter., Inc. v. Visa, Inc.*, No. 20-CV-02394 (E.D.N.Y. May 29, 2020), Docket Entry No. 1 ("*Old Jericho* Compl."); Compl., *Lanning v. Visa, Inc.*, No. 21-cv-02360 (E.D.N.Y. Apr. 28, 2021), Docket Entry No. 1 ("*Lanning* Compl."); Compl., *Camp Grounds Coffee, LLC v. Visa, Inc.*, No. 21-cv-03401 (E.D.N.Y. June 16, 2021), Docket Entry No. 1 ("*Camp Grounds Coffee* Compl.").) Defendants argue that these cases are sufficiently similar as each of these cases alleges that Visa and Mastercard harmed competition by conspiring with member banks to set supracompetitive default interchange rates. (*Id.* at 12–13.) In addition, Defendants contend that these class actions also raise indirect purchaser claims under California's Cartwright Act and Unfair Competition Law. (*Id.* at 13.) According to Defendants, "it does not matter" that the putative class or legal theories differs. (*Id.* at 13.) Instead, what matters is that "similar factual allegations" have been made against the Defendants. (*Id.* at 14.)

As mentioned above, Plaintiffs must also prove that no other class action "asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons" was filed in the three-year period preceding the filing of the instant action. 28 U.S. § 1332(d)(4)(A); *Carter*, 260 F. Supp. 3d at 284. In interpreting this provision, courts have found that "[t]he inquiry is whether similar factual allegations have been made against the defendant in multiple class actions, regardless of whether the same causes of actions were asserted or whether

16

the purported plaintiff classes were the same (or even overlapped in significant respects)." *Carter*, 260 F. Supp. 3d at 284 (quoting S. Rep. No. 109–14 at 41); *see also Schutte v. Ciox Health, LLC*, 28 F.4th 850, 859 (7th Cir. 2022) ("[D]ifferences in legal theories do not place two complaints with similar factual allegations outside the provision's sweep." (citation omitted)); *Dutcher v. Matheson*, 840 F.3d 1183, 1192 (10th Cir. 2016) ("[T]he causes of action in [other class action] and the causes of action at issue in this case fundamentally rely on demonstrating the same facts."); *Brook*, 2007 WL 2827808, at *4 (finding that the local controversy exception did not apply where a class action raising similar claims had been filed in the last three years, even though the purported classes differed). "[A] prior class action that is factually similar qualifies regardless of whether it was brought on behalf of the same *or* other persons." *Schutte*, 28 F.4th at 863 (emphasis in original) (internal quotations marks omitted).

      While Plaintiffs contend that the "other persons" cannot include persons adverse to those in the instant action because otherwise the phrase "same *or* other persons" is mere surplusage, the statute's plain language does not support this limitation. *See id.* (rejecting a similar argument that the "other persons" would need to have some connection to the plaintiffs and explaining that any redundancy made the statute's meaning "crystal clear" — that the prior class action did not need to involve the same class representatives to qualify). Nor have Plaintiffs cited to any case law or legislative history supporting this reading. Plaintiffs cannot show that no other class action raising similar factual allegations has been filed in the three years preceding the filing of this case. While the purported classes and causes of action differ, similar factual allegations are made in the Complaint as in the *Old Jericho*, *Lanning* and *Camp Coffee* cases. The critical question in each of these cases is whether Visa, Mastercard and the bank defendants harmed competition by engaging in agreements to raise interchange fees. *Compare Old Jericho* Compl.

17

¶ 2 ("The obligation of the swipe fee is the product of horizontal price-fixing agreements among the card-issuing banks that comprise the Visa and MasterCard networks."); *Lanning* Compl. ¶ 2 ("The obligation to pay the Interchange Fee is the product of horizontal price-fixing agreements among the card-issuing banks that comprise the Visa and MasterCard networks."); and *Camp Grounds Coffee* Compl. ¶ 2 (same), *with* FAC ¶ 72 ("Defendants — through written contracts — have formed and executed a horizontal trust to fix, enforce, and maintain the interchange price that competing issuing banks charge . . . ."); FAC ¶ 84 ("The interchange-fee contracts are horizontal agreements that eradicate competition among the Visa and Mastercard members banks for merchant-acceptance of their cards, and that shields the combinations from competition from other payment-card networks."); and FAC ¶ 150 ("The member banks have remained separate entities situated horizontally in the relevant market. Instead of competing for merchant acceptance, however, they have perpetuated the anticompetitive [network rules] by remaining parties to written agreements devised by the networks . . . ."). To demonstrate this, the plaintiffs in those cases rely on similar, if not identical, facts and although there are differences between those cases and this one — for instance, that the plaintiffs claim that defendants agreed not to disclose the interchange fee to consumers (FAC ¶ 72) — the issues do not need to be identical. *See Dutcher*, 840 F.3d at 1192 ("In at least one crucial respect, the need to demonstrate absence of authority to foreclose, both cases required identical factual showings."). Moreover, although the causes of action need not be the same for the other class actions to be sufficiently similar, the complaints in these cases also allege violations of California law. (*Old Jericho* Compl. ¶¶ 94–103; *Lanning* Compl. ¶¶ 93–107; *Camp Grounds Coffee* Compl. ¶¶ 103–107.) Because the factual allegations in this case are similar to those in other cases, the local controversy exception does not apply and remand to the state court is inappropriate.

### III. Conclusion

Because the Court has jurisdiction under CAFA and the local controversy exception does not apply, the Court denies Plaintiffs' motion to remand this action to state court.[6]

Dated: June 14, 2023
Brooklyn, New York

SO ORDERED:

\_\_\_\_\_/s/ MKB_____
MARGO K. BRODIE
United States District Judge

---

[6] Defendants also argue that the Court has original jurisdiction under the Federal Edge Act because eight of the named Defendants are national bank associations, organized under the laws of the United States, and Plaintiffs' claims arise out of transactions involving international or foreign banking operations. (Defs.' Opp'n 2, 14–16.) Because the Court finds that it has jurisdiction under CAFA and the local controversy exception does not apply, the Court declines to decide whether removal is available under this alternative framework.

19