UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| JOHN PALLADINO, GARIB KARAPETYAN, STEVE PALLADINO, AND JOHN NYPL, Individual Plaintiffs and on behalf of all those similarly situated<br><br>Plaintiffs,<br><br>v.<br><br>JPMORGAN CHASE & CO., JPMORGAN CHASE BANK N.A., BANK OF AMERICA CORPORATION, BANK OF AMERICA, NATIONAL ASSOCIATION, BANK OF AMERICA N.A., WELLS FARGO & COMPANY, WELLS FARGO BANK N.A., CITIGROUP INC, CITIBANK N.A., CITIBANK N.A. (NATIONAL ASSOCIATION), U.S. BANCORP, US BANCORP, U.S BANK NATIONAL ASSOCIATION, PNC FINANCIAL SERVICES GROUP, INC., PNC, PNC BANK NATIONAL ASSOCIATION, CAPITAL ONE F.S.B., CAPITAL ONE FINANCIAL CORPORATION, CAPITAL ONE BANK (USA), NATIONAL ASSOCIATION, CAPITAL ONE, NATIONAL ASSOCIATION, BANK OF THE WEST, VISA INC., VISA U.S.A. INC., VISA INTERNATIONAL SERVICE ASSOCIATION, MASTERCARD INCORPORATED, and MASTERCARD,<br><br>Defendants. | CASE NUMBER:<br><br>23-CV-1215 (MKB) (JAM)<br><br><br>AMENDED NOTICE OF MOTION AND MOTION FOR RECONSIDERATION OF THIS COURT'S ORDER OF 12-30-2024; REQUEST FOR LEAVE TO AMEND; REQUEST FOR JURISDICTIONAL DISCOVERY AS TO PNC; AND REQUEST FOR ORAL ARGUMENT |

1

Plaintiffs' Amended Motion for Reconsideration of Order of Dismissal Dec. 30, 2024

## Table of Contents

Table of Contents ................................................................................... 2

Table of Authorities ............................................................................. 3

I.    Preliminary Statement ................................................................ 4

II.   Controlling Facts Alleged ........................................................... 5

III.  The Findings of the Court .......................................................... 7

IV.   Federal and State Antitrust Law Favor Consumer Enforcement Laws Prohibiting Price Fixing. .................................................... 7

V.    *AGC* and the Efficient Enforcer Finding ................................... 8

VI.   The *Associated General Contractors v. Carpenters* Case ............ 10

VII.  The Market and the *Salveson* Case ........................................ 10

VIII. Request for Leave to Amend ................................................... 12

IX.   Conclusion ................................................................................ 14

X.    FRCP Rule 4 Request for Oral Argument ................................ 14

2

Plaintiffs' Amended Motion for Reconsideration of Order of Dismissal Dec. 30, 2024

**Table of Authorities**

**Cases**

*Ashcroft v. Iqbal* 556 U.S. 662 (2009) .................................................................. 9

*Associated General Contractors v. Carpenters* 459 U.S. 519 (1983)............ 7, 11

*Bell Atlantic Corp. v. Twombly* 544 U.S. 207 (2004) ......................................... 9

*Continental Ore v. Union Carbide*, 370 US 690 (1962)...................................... 4

*Illinois Brick Co. v. Illinois, 431 U.S. 720 (1977)*.............................................. 8

*In Re Payment Card Interchange Fee and Merchant Discount Antitrust*
    *Litigation,* Second Consolidated Amended Class Action Complaint, Case
    1:05-md-01720-JG-JO, Document 1153 Filed 02/20/09 ............................... 6

*Knevelbaard Dairies Inc. v Kraft Foods* 232 F.3d 979 (9th Cir. 2000).............. 4

*Reiter v. Sonotone* 442 U.S. 330 (1979)............................................................... 7

Plaintiffs' Amended Motion for Reconsideration of Order of Dismissal Dec. 30, 2024

## I.      Preliminary Statement

The Plaintiffs respectfully move the Court for reconsideration of its order of December 30, 2024, for leave to amend; for oral argument; and for jurisdictional discovery on the ground that, in the opinion of the Plaintiffs, the Court overlooked and misapprehended material points of fact and law, and that an exceptional question is presented, substantially affecting the enforcement of antitrust case law.

The factual and legal findings referenced in this Court's Memorandum and Order (Order) related to the Plaintiffs' legal and factual contentions are the subject of the request for reconsideration sought by Plaintiffs here:

1.  As Visa admitted in its Answer to this First Amended Complaint (FAC) at ¶104, that: "Purchases of transactions made with a Visa-branded payment card typically involve a cardholder, merchant, acquiring bank and issuing bank." Answer of Visa Inc., Docket #11, page 19 ¶104. Plaintiffs allege participation in the relevant market in which these transactions are made. See FAC ¶100-109 and 110.  The market described is alleged to be the relevant market that was impacted by the illegal conspiracy. See also *Knevelbaard Dairies Inc. v Kraft Foods* 232 F.3d 979 (9th Cir. 2000).

2.  "Every combination and conspiracy must be judged as a whole without tightly compartmentalizing the various factual components and wiping the slate clean after the scrutiny of each....the character and effect of a conspiracy are not to viewed by dismembering it and viewing its separate parts, but only by looking at it as a whole." *Continental Ore v. Union Carbide*, 370 US 690 (1962). The Court erred in its conclusion that there are two markets in play in the transactions at issue when in fact and as a matter of law there is only one.  *Id.* See also VISA's admission referenced above.

3.  Because the merchants are co-conspirators with the banks and the networks, the payment by the cardholder of the illegal fee is injury in fact, the cardholder paying more than would otherwise be paid in absence of the unlawful agreement.

4.  This Court has personal jurisdiction over PNC because PNC can be found and does business in the United States.  [Section 12, Clayton Antitrust

Plaintiffs' Amended Motion for Reconsideration of Order of Dismissal Dec. 30, 2024

Act]  At a minimum, discovery should be granted under Rule 1 of Federal Rules of Civil Procedure.

5. The antitrust laws were designed to protect the consumer, in this case the cardholder.  "*Reiter v. Sonotone* 442 U.S. 330 (1979)

6. Oral argument should be granted as a Constitutional right because the defendant's motion is dispositive and, under the 5th Amendment to the U.S. Constitution due process of law has been consistently interpreted as a "hearing", not a "writing." See FRCP, Rule 12(i).

## II.    Controlling Facts Alleged

This is a consumers' damages antitrust case. A conspiracy to fix the price of interchange fees is alleged.

The Court in its Order of Dismissal (Order) references Plaintiffs' allegation that the merchants are essential co-conspirators but only in passing. See Order at 25.  Notwithstanding the allegation of merchant direct participation in the conspiracy, the Court concludes that consumer/card holders don't participate in the relevant market affected by price fixing conspiracy.  The co-conspirator allegation is not addressed by the Court in its conclusion that Plaintiff cardholders do not participate in relevant market alleged in the FAC and therefore Plaintiffs' are not "efficient enforcers" as described in *Associated General Contractors v. Carpenters* 459 U.S. 519 (1983)

Plaintiffs purchase products directly from merchant co-conspirators at inflated prices. FAC ¶55, 80, 81-85.

Plaintiffs believe they have fully alleged their participation in the market impacted by the conspiracy. The Plaintiffs allege at FAC ¶¶100 - 110 that the relevant market is the *General Purpose Card Network Services Market* and that

Plaintiffs' Amended Motion for Reconsideration of Order of Dismissal Dec. 30, 2024

Plaintiffs participate in this market when they make purchases and pay their credit card bills.  The Court disagrees, but amendment of the FAC requested herein would remedy this perceived failing.

And moreover, the fact that all California merchants' retail prices are uniformly inflated is *admitted* by the merchants.  In their Second Consolidated Amended Class Action Complaint, the plaintiff merchants allege:

> "Likewise, the Anti-Steering Restraints have a profound inflationary effect on retail goods and services. **The Defendants' rules ensure that Merchants seeking to pass along these costs must raise prices to all consumers**, **including cash-payers, PIN-Debit Card users, and those who would otherwise seek to avoid the high cost of Defendants' Interchange Fees. But for these rules consumer prices would be lower."**  (United States District Court Eastern District of New York, *In Re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation,* Second Consolidated Amended Class Action Complaint, Case 1:05-md-01720-JG-JO, Document 1153 Filed 02/20/09, at Page 56, paragraph 194.) (This complaint is active, has not been dismissed and has been pending for more than twenty years.) See Plaintiffs' First Amended Complaint (hereinafter "FAC") at ¶¶ 200.

It is alleged and undisputed as fact that credit/debit card accepting merchants, albeit reluctantly, have agreed to pass the illegally inflated interchange fee on to their customers. As the intended goal and result of the agreement, it is the consumers who bear the actual cost of the overcharge in the form of universally higher prices. See FAC ¶¶199-204. The merchant is merely the conduit to the banks for transmitting the interchange fee, absorbed by the plaintiffs in the inflated cost of goods and services. Alleged at length in the First Amended Complaint herein, (See FAC ¶¶54, 55, 80-85,103, 199-204,) this seminal allegation was not addressed, much less ruled upon by the Court in its Order of Dismissal. It is because at least in

6

part, this oversight or misapprehension of the basic nature of Plaintiffs' claims herein that Plaintiffs seek reconsideration of the Court's Order herein.

### III.    The Findings of the Court

The court has found that consumers, the only parties actually damaged by the conspiracy alleged, do not participate in the market in which the conspiracy occurred and that therefore they are not "efficient enforcers" of the antitrust laws as required under *Associated General Contractors v. Carpenters* 459 U.S. 519 (1983) (*AGC*). Plaintiffs here seek reconsideration of this Court's Order dismissing Plaintiffs' Complaint. The sole basis announced for the dismissal is the Court's finding that Plaintiffs have failed to allege facts showing they are efficient enforcers as defined in *Associated General Contractors v. Carpenters* 459 U.S. 519 (1983) of California's Cartwright Act price-fixing prohibitions.

The Court has not addressed the Plaintiffs' allegation set out at length in the FAC that Plaintiffs participate in the impacted market in a number of ways, most obvious being their daily dealings with merchants alleged to be active and indispensable co-conspirators. In fact, Plaintiffs are the only enforcers.

### IV.    Federal and State Antitrust Law Favor Consumer Enforcement Laws Prohibiting Price Fixing.

Our United States Supreme Court addressed consumer standing under the Sherman Act price fixing cases. *Reiter v. Sonotone* 442 U.S. 330 (1979) was decided after the court in *Illinois Brick* announced its indirect purchaser policy. *Reiter* holds:

Plaintiffs' Amended Motion for Reconsideration of Order of Dismissal Dec. 30, 2024

"Consumers in the United States purchase at retail more than $1.2 trillion in goods and services annually. 1978 Economic Report of the President 257 (Table B-1). It is in the sound commercial interests of the retail purchasers of goods and services to obtain the lowest price possible within the framework of our competitive private enterprise system. **The essence of the antitrust laws is to ensure fair price competition in an open market. Here, where petitioner alleges a wrongful deprivation of her money because the price of the hearing aid she bought was artificially inflated by reason of respondents' anticompetitive conduct, she has alleged an injury in her "property" under §4.**" **442 U.S. 330, 342.** (Emphasis Added.)

## V.    *AGC* and the Efficient Enforcer Finding

The fact alleged is that the cardholders are the only persons capable of enforcing the price fixing claims.  The merchants are co-conspirators.  There are no innocent players left. It is helpful to reiterate Plaintiffs' seminal allegation that the networks, the banks and their *merchant clients* have combined and conspired to fix the price of interchange fees, and to pass the inflated fee on to the cardholder/consumer in the overpriced products and services purchased by cardholders from California's merchants, and divide the *cardholders'* money among themselves.  The merchants with whom the Plaintiffs deal directly on a daily basis are active, ongoing and indispensable players and participants in the retail products market impacted by the ongoing conspiracy. Plaintiffs participate in the market literally every day as they tender their credit cards to conspiring merchants as payment for goods priced by these very merchants, higher than would have been the case absent the conspiracy. This fact is oft alleged and must be accepted as true for our purposes here. *Bell Atlantic Corp. v. Twombly* 544 U.S. 207 (2004), *Ashcroft v. Iqbal* 556 U.S. 662 (2009).

8

The legal effect of these facts on the "efficient enforcer" requirement enunciated by the Court is determinative of the outcome in this case. Yet the claim is simply not addressed in the Order. Plaintiffs believe it is dispositive. Plaintiffs do in fact deal directly in the market impacted by the conspiracy. Absent their direct and regular participation in the affected market, regardless how it is defined, there would be no conspiracy in the market impacted because there would be no money for the conspirators to divide.

The precise nature and operation of the market in which the conspiracy was hatched is unclear as the court acknowledges.  See Order at p 29-30 Note 10. The relevant market(s) related to this action are vast and complex.  If granted leave to amend, Plaintiffs will provide a more concise relevant market definition. But absent that, the fact remains that regardless of the market definition ascribed, there is no doubt that Plaintiffs participated in it with every purchase made and card balance tendered.

And again, the question whether this allegation satisfies the requirement that Plaintiff must deal directly with the market impacted by the conspiracy is simply not addressed by the Court.

Plaintiffs allege as damage that the price(s) of the products they purchase have been inflated as the result of co-conspirator merchants' agreements with their banks to increase their retail selling prices by amounts at least equal to interchange fees they incurred as the cost of processing debit/credit card payments. (See FAC ¶9, 202-205) Banks never disclose to cardholders the fact that they are paying a two to

9

three percent interchange 'tax" on every dollar they spend using their credit cards. Merchants promote this vile conduct as part of their participation in the conspiracy.

## VI.   The *Associated General Contractors v. Carpenters* Case

The Court in its Order acknowledges and accepts Plaintiffs' allegations of the price-fixing conspiracy as alleged in the Complaint.  "As well it accepts that a cause of action has been stated under the Cartwright Act."  See Order at page 27-28. However, the Court holds that in order to demonstrate Plaintiffs' antitrust standing under California Cartwright Act Plaintiffs must also allege their participation in the market negatively impacted by the conspiracy. *Id*. As will be shown below, Plaintiffs believe they adequately and affirmatively alleged such market participation.  Moreover, if the Court does not agree Plaintiffs here seek leave to amend their Complaint in order to do so.

## VII.   The Market and the *Salveson* Case

This case differs substantively from *Salveson*.  Here plaintiffs allege the merchants are co-conspirators, a claim which this court must accept as true.  There is no such allegation in *Salveson*. Both the defendants' and the magistrate's insistence that the *Salveson* holding applies here is and must be premised upon their disbelief in Plaintiffs co-conspirator allegation.

The merchant participation may have been coerced.  That is no defense. Their direct participation in Defendants' illegal scheme is alleged here. Merchants actively support and promote the price fix that enables the defendants to exact an inflated interchange from the consumers. The Court acknowledges that the conduct

10

of Defendants as alleged is illegal and that it proximately caused damage to the Plaintiffs in the form of inflated product prices. Order at 27 citing FAC ¶87.

The court concludes that Plaintiffs must allege facts showing that they are "efficient enforcers" as defined by *AGC* and *Knevelbaard Dairies v. Kraft Foods Inc.* 232 F.3d 979 (9th Cir 2000). Although in Court's opinion they have alleged three of the four efficient enforcer elements required by *Knevelbaard* and *AGC*, this market participation omission is fatal to their antitrust claim herein. See Order at 28-29.

The Court holds that in order to satisfy the Court that Plaintiffs are efficient enforcers of their claims, they must *allege* participation in the market in which the conspiracy was hatched and in which competition has been restrained.   Plaintiffs believe it to be obvious that such participation has been alleged by Plaintiffs and that the conduct is ongoing on a daily basis.  The court finds to the contrary. It places reliance upon *Salveson v. J.P. Morgan Chase Corp.* 166 F. Supp. 3d 242, 264 (E.D.N.Y. 2016), aff'd, 663 F. Apex 71 (2d Cir. 2016) ("*Salveson III*"), finding that the market described in this FAC is different from the market in which the illegal conduct here alleged occurred.  The Court holds: "Plaintiffs fail; to establish antitrust injury as either indirect or direct purchasers because they do not allege cardholder participation in the market where the anticompetitive conduct occurred." Order at p 29.

Plaintiffs allege that *all products and services* purchased with credit cards in California are artificially inflated. Moreover, they allege that the seller of these overpriced products is a participating member of the alleged conspiracy that created

11

Plaintiffs' Amended Motion for Reconsideration of Order of Dismissal Dec. 30, 2024

the overcharge. The fixed interchange fees are assessed upon the total amount tendered by the Plaintiff at the point of sale.  Plaintiffs claim in this case that the merchants participate directly, albeit reluctantly, in the conspiracy, which has at its core the purpose and intention to acquire money from the consumer, not the merchant.

The First Amended Complaint describes the market environment in which the conspiracy exists. The General Purpose Card Network Services Market in which Plaintiffs participate is two sided: Cardholders and issuing Banks on the one side; merchants and acquiring banks on the other. The only product sold in this two-sided market is the transaction, which necessarily involves merchants and cardholders. The antitrust injury alleged is the transaction price inflated by the conspiracy. FAC ¶99-105.

## VIII.  Request for Leave to Amend

The Court's holding in this motion to dismiss is premised upon the finding that Plaintiffs do not participate in the market wherein the conspiratorial conduct takes place. This necessarily entails the conclusion that the relevant market in which the price fix agreement included, as in *Salveson*, participation only among the Banks and the networks.  This conclusion is contrary to the allegations at the crux of Plaintiffs' case.  Plaintiffs have alleged here differently, that the market includes merchant participation as an essential element.  The Court is not at liberty to ignore this seminal factual assertion.  Therefore the finding that plaintiffs do not participate in the relevant market is flawed.

12

Plaintiffs' Amended Motion for Reconsideration of Order of Dismissal Dec. 30, 2024

It is not disputed that every credit card purchase and transaction "involve[s]" as Visa *admits* in its Answer herein, four parties: the merchant, the *cardholder* and the banks.  The transaction market in which this four party arrangement operates is the relevant market. The relevant market alleged in the FAC is *General Purpose Card Network Services* market. This market includes the cardholder Plaintiffs. They make purchases and payments in this market every day.

It may be that three parties, the banks and the two networks, hatched the original conspiracy, but they needed and demanded joinder into the scheme from the merchants. The court has not addressed this seminal factual premise. To the extent the FAC is not clear as to this allegation, Plaintiffs seek leave to amend to make the claim clear.

Court suggests that the relevant market allegations in the FAC are less than clearly defined such that the Court was not able to discern the specifics of the markets in issue. This perceived shortcoming can most surely be remedied with a grant of leave to amend. See Order at p 29-30 Note 10.

It is apparent that relevant market described in the *Salveson* case was adopted by the Court here.  The Salveson market did not contemplate or allege the nature of the conspiracy described in this action and surely the market alleged in *Salveson* did not include merchant participation. Plaintiffs seek to revisit the relevant market issue by amendment in order to clarify their relevant market allegations in accordance with the views set out by the Court in this Order.

Plaintiffs' Amended Motion for Reconsideration of Order of Dismissal Dec. 30, 2024

Plaintiffs respectfully request leave to amend if the Court decides to enter the Order issued herein.

## IX.    Conclusion

The controlling issue in the Motion to Dismiss is whether the Plaintiffs participated in the relevant market impacted by the conspiracy.  Plaintiffs believe that allegation of participation is contained in ¶100 – 111 of the FAC. Leave to amend is requested to clarify Plaintiffs' participation in that market together with facts relevant thereto.

The antitrust laws prohibit overcharge.  Overcharge is the essence of the evil in price fixing.  Only Plaintiffs pay the overcharge. (The merchants absorb it but pass it on.) Given that merchants here were "involved" and actively participated in the implementation of the price fix that generated the overcharge, the plaintiffs are the *only parties left* in position to enforce the law prohibiting the conduct.

## X.    FRCP Rule 4 Request for Oral Argument

This motion for reconsideration is in response to a potentially dispositive ruling from the Court herein. Plaintiffs have a constitutional right to be "heard."  They respectfully request oral argument on this motion at a time convenient to the Court.

Dated:  January 14, 2025        /s/  *Joseph M. Alioto*
ALIOTO LAW FIRM
Joseph M. Alioto
Attorneys for Plaintiffs

14

Plaintiffs' Amended Motion for Reconsideration of Order of Dismissal Dec. 30, 2024

## PLAINTIFFS' COUNSEL

*Joseph M. Alioto (CSBN 42680)
Tatiana V. Wallace (CSBN 233939)
ALIOTO LAW FIRM
One Sansome Street, 35th Floor
San Francisco, California 94104
Telephone: (415) 434-8900
Facsimile: (415) 434-9200
Email: josephmalioto@aliotolaw.com
Email: twallace@aliotolaw.com

Jeffery K. Perkins (CSBN 57996)
1550-G Tiburon Boulevard, #344
Tiburon, California 94920
Telephone: (415) 302-1115;
Email: jefferykperkins@aol.com

Joseph M. Alioto Jr. (CSBN 215544)
ALIOTO LEGAL
One Sansome St., 35th Floor
San Francisco, CA 94104
Telephone: (415) 398-3800
Email: joseph@aliotolegal.com

Lawrence G. Papale (CSBN 67068)
LAW OFFICES OF LAWRENCE G. PAPALE
The Cornerstone Building
1308 Main Street, Suite 117
St. Helena, CA 94574
Telephone: (707) 963-1704
Email: lapapale@papalelaw.com

Theresa Moore (CSBN 99978)
LAW OFFICES OF THERESA D. MOORE
One Sansome Street, 35th Floor
San Francisco, CA 94104
Phone: (415) 613-1414
Email: tmoore@aliotolaw.com

15

**PLAINTIFFS' COUNSEL**

Christopher A Nedeau (SBN 81297)
NEDEAU LAW PC
154 Baker Street
San Francisco, CA 94117-2111
Telephone:  (415) 516-4010
Email: cnedeau@nedeaulaw.net

16

Plaintiffs' Amended Motion for Reconsideration of Order of Dismissal Dec. 30, 2024

## CERTIFICATE OF COMPLIANCE

The foregoing Amended Notice Of Motion And Motion For Reconsideration of This Court's Order of 12-30-2024; Request For Leave to Amend; Request for Jurisdictional Discovery As to PNC; and Request for Oral Argument complies with the type-volume limitations set forth in Federal Rules of Civil Procedure 32(g). Plaintiffs' Amended Motion for Reconsideration of This Court's Order Of 12-30-2024 contains 3,430 total words.

This Plaintiffs' motion complies with the typeface and type-style requirements of Federal Rule of Civil Procedure 32(g) because: the document has been prepared in proportionally spaced typeface using Microsoft Word 12- point Century Schoolbook with a Table of Authorities using Microsoft Word 12-point Century Schoolbook.

Dated:  January 14, 2024

/s/ *Joseph M. Alioto*

_____

Joseph M. Alioto

17

Plaintiffs' Amended Motion for Reconsideration of Order of Dismissal Dec. 30, 2024