UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

JOHN PALLADINO, GARIB KARAPETYAN,
STEVE PALLADINO, and JOHN NYPL, *on behalf
of themselves and all others similarly situated*,

                     Plaintiffs,

              v.

JPMORGAN CHASE & CO., JPMORGAN
CHASE BANK N.A., BANK OF AMERICA
CORPORATION, BANK OF AMERICA,
NATIONAL ASSOCIATION, BANK OF
AMERICA N.A., WELLS FARGO & COMPANY,
WELLS FARGO BANK N.A., CITIGROUP INC,
CITIBANK N.A., CITIBANK N.A. (NATIONAL
ASSOCIATION), U.S. BANCORP, US
BANCORP, U.S BANK NATIONAL
ASSOCIATION, PNC FINANCIAL SERVICES
GROUP, INC., PNC, PNC BANK NATIONAL
ASSOCIATION, CAPITAL ONE F.S.B.,
CAPITAL ONE FINANCIAL CORPORATION,
CAPITAL ONE BANK (USA), NATIONAL
ASSOCIATION, CAPITAL ONE, NATIONAL
ASSOCIATION, BANK OF THE WEST, VISA
INC., VISA U.S.A. INC., VISA
INTERNATIONAL SERVICE ASSOCIATION,
MASTERCARD INCORPORATED, and
MASTERCARD,

                   Defendants.

---------------------------------------------------------------

**MEMORANDUM & ORDER**

23-CV-1215 (MKB)

MARGO K. BRODIE, United States District Judge:

      Plaintiffs John Palladino, Garib Karepetyan, Steve Palladino, and John Nypl commenced

the above-captioned putative class action on December 30, 2022, in the Superior Court of the

State of California for the County of San Francisco, against Defendants Visa Inc., Visa U.S.A.,

Inc., and Visa International Service Association (together, "Visa") and MasterCard International

Incorporated ("Mastercard"), as well as Visa and Mastercard's member banks, JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A. (together, "Chase"); Bank of America Corporation, Bank of America, National Association, and Bank of America, N.A. (together, "Bank of America"); Wells Fargo & Company and Wells Fargo Bank, N.A. (together, "Wells Fargo"); Citigroup Inc., Citibank, N.A., and Citibank, N.A. (National Association) (together, "Citi"); U.S. Bancorp and U.S. Bank National Association (together, "U.S. Bank"); PNC Financial Services Group, Inc., PNC, and PNC Bank National Association (together, "PNC"); Capital One Financial Corporation, Capital One, F.S.B., Capital One Bank (USA) National Association, and Capital One National Association (together, "Capital One"); and BMO Harris Bank N.A., successor-in-interest to Bank of the West ("Bank of the West") (collectively, "Defendants"). (*See* Compl., annexed to Notice of Removal as Ex. A, Docket Entry No. 1-1.) Plaintiffs, who are California citizens and Visa or Mastercard cardholders, alleged that Defendants violated California's Cartwright Act, Cal. Bus. & Prof. Code § 16700 *et. seq.*, and California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et. seq.* ("UCL"). (*See id.*) Plaintiffs allege that Defendants, and all the retail merchants who accept Visa or Mastercard payment cards, conspired to fix the price of the interchange fees charged when a consumer uses a Visa or Mastercard to purchase a retail good or service, which harmed competition and resulted in increased retail prices. (*Id.* ¶¶ 62–65, 72–80, 89–98, 124, 127–40, 147–51, 208, 211.) Plaintiffs seek monetary damages, disgorgement, and injunctive relief. (*Id.* ¶¶ 13, 70.)

On February 9, 2024, Defendants moved to dismiss the Amended Complaint or, in the alternative, to compel arbitration, and PNC moved to dismiss for lack of personal jurisdiction. (Defs.' Joint Mot. to Dismiss Pls.' Compl. and to Compel Arbitration ("Defs.' Mot. to Dismiss"), Docket Entry No. 71; Defs.' Mem. in Supp. of Defs.' Mot. to Dismiss 25–26, Docket Entry No.

72.)  On December 30, 2024, the Court (1) denied Defendants' motion to compel arbitration; (2) granted PNC's motion to dismiss for lack of personal jurisdiction; (3) denied Plaintiffs' request for jurisdictional discovery; and (4) granted Defendants' motion to dismiss pursuant to Rules 12(b)(6) and 12(c) of the Federal Rules of Civil Procedure (the "December 2024 Decision"). (Dec. 2024 Decision, Docket Entry No. 97); *Palladino v. JPMorgan Chase & Co.*, --- F. Supp. 3d ---, ---, 2024 WL 5248824, at *15 (E.D.N.Y. Dec. 30, 2024).  Plaintiffs now move for reconsideration of the Court's December 2024 Decision pursuant to Rule 59 of the Federal Rules of Civil Procedure and Local Civil Rule 6.3[1] and request leave to file a Second Amended

---

[1]  Rule 6.3 is the local rule governing motions for reconsideration, but such motions may also be brought under Federal Rules of Civil Procedure 59(e), which addresses altering or amending a judgment, and 60(b), which provides for relief from a final judgment.  *See Barker v. Rokosz*, No. 19-CV-514, 2024 WL 3904871, at *1 (E.D.N.Y. Aug. 22, 2024) ("Motions for reconsideration are governed by Federal Rule of Civil Procedure 59(e) and Local Civil Rule 6.3."); *Liu v. Cuomo*, No. 22-CV-5384, 2023 WL 5436133, at *1 n.1 (E.D.N.Y. Aug. 22, 2023) ("Motions for reconsideration may be brought pursuant to Rules 59(e) and 60(b) of the Federal Rules of Civil Procedure . . . and [Local Civil Rule 6.3]."); *Petion v. Senior Philanthropy of Westport, LLC*, No. 16-CV-1993, 2019 WL 762666, at *1 (D. Conn. Feb. 21, 2019) ("Rule 59(e) covers a broad range of motions, including motions for reconsideration." (alteration omitted) (quoting *Assoc. for Retarded Citizens of Conn. v. Thome*, 68 F.3d 547, 554 (2d Cir. 1995))).  "The standards for motion for reconsideration under Local Rule 6.3 and altering or amending a judgment under Rule 59(e) are 'identical.'"  *Wilder v. Hoiland*, No. 22-CV-1254, 2024 WL 1795410, at *1 (S.D.N.Y. Apr. 24, 2024) (quoting *Burke v. Acosta*, No. 07-CV-9933, 2009 WL 10696111, at *1 (S.D.N.Y. Apr. 23, 2009)), *affirmed sub nom.* 377 F. App'x 52 (2d Cir. 2010).  "A court may grant a Rule 59(e) motion only when the [movant] identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."  *Metzler Inv. Gmbh v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 142–43 (2d Cir. 2020) (alteration in original) (internal quotation marks omitted).  Thus, while Rule 6.3 mentions only "matters or controlling decisions which counsel believes the court has overlooked" as bases for reconsideration, *see* S.D.N.Y. & E.D.N.Y. Local Civ. R. 6.3, reconsideration may also be justified based on manifest injustice.  *Cho v. Blackberry Ltd.*, 991 F.3d 155, 170 (2d Cir. 2021) ("[A] party may move for reconsideration and obtain relief only when the [party] identifies . . . the need to correct a clear error or prevent manifest injustice." (alterations in original) (quoting *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 108 (2d Cir. 2013))).

Complaint, and Defendants oppose Plaintiffs' motion and request.[2]  For the reasons explained

below, the Court denies Plaintiffs' motion for reconsideration and denies Plaintiffs' motion for

leave to amend.

## I.  Background

On December 30, 2022, Plaintiffs, who are California citizens and Visa or Mastercard

cardholders, commenced this action by filing a Complaint in the Superior Court of the State of

California.  (*See* Compl.)  Defendants removed the action to the United States District for the

Northern District of California, (*see* Notice of Removal, Docket Entry No. 1), and then

transferred the action to this Court for consolidation with *In re Payment Card Interchange Fee &*

*Merchant Discount Antitrust Litigation*, (*see* Case Transfer Notice dated Feb. 15, 2023;

Conditional Transfer Order, Docket Entry No. 9).  On January 11, 2023, Plaintiffs filed an

Amended Complaint.  (*See* Notice of Removal ¶ 7; Am. Compl., annexed to Notice of Removal

as Ex. C, Docket Entry No. 1-3.)

On February 9, 2024, Defendants moved to dismiss the Amended Complaint or, in the

alternative, to compel arbitration; all Defendants other than Visa moved to dismiss pursuant to

---

[2]  (Pls.' Mot. for Reconsideration, Docket Entry No. 98; Pls.' Am. Motion for
Reconsideration ("Pls.' Mot."), Docket Entry No. 99-1; Pls.' Mem. in Supp. of Pls.' Mot. ("Pls.'
Mem."), Docket Entry No. 99; Defs.' Mem. in Opp'n to Pls.' Mot. ("Defs.' Opp'n), Docket
Entry No. 100; Pls.' Reply in Supp. of Pls.' Mot. ("Pls.' Reply"), Docket Entry No. 101.)

Local Civil Rule 6.3 provides that "[u]nless otherwise provided by the court or by statute
or rule (such as Fed. R. Civ. P. 50, 52, and 59), a notice of motion for reconsideration must be
served within 14 days after the entry of the court's order being challenged."  Local Civ. R. 6.3.
Rule 59(e) requires that "[a] motion to alter or amend a judgment must be filed no later than 28
days after the entry of the judgment."  Fed. R. Civ. P. 59(e).  Because Local Civil Rule 6.3's
fourteen-day deadline applies "[u]nless otherwise provided by . . . rule," such as Rule 59(e), the
twenty-eight day deadline governs.  The Court's December 2024 Decision was filed on
December 30, 2024, and Plaintiffs filed their Amended Motion on January 14, 2025, fifteen days
after entry of the Court's order.  Accordingly, Plaintiffs' Amended Motion for Reconsideration
was timely filed because they filed their motion "no later than 28 days after the entry of the
judgment."  Fed. R. Civ. P. 59(e).

Rule 12(b)(6) of the Federal Rules of Civil Procedure; Visa moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure; and PNC moved to dismiss for lack of personal jurisdiction.  (Defs.' Mot. to Dismiss; Defs.' Mem. in Supp. of Defs.' Mot. to Dismiss 25–26.)  The Court referred the motion to Magistrate Judge Joseph A. Marutollo for a report and recommendation.  (Order Referring Mot. dated July 8, 2024.)

By report and recommendation dated July 31, 2024, Judge Marutollo recommended (1) denial of Defendants' motion to compel arbitration; (2) dismissal of Plaintiffs' Cartwright Act and UCL claims pursuant to Rules 12(b)(6) and 12(c) of the Federal Rules of Civil Procedure; and (3) dismissal of Plaintiffs' claims against PNC for lack of personal jurisdiction (the "R&R").  (R&R, Docket Entry No. 92.)  On August 14, 2024, Plaintiffs filed their objections to the R&R; and on August 28, 2024, Defendants filed their response to Plaintiffs' objections.[3]

In the December 2024 Decision, the Court concluded that Plaintiffs lack antitrust standing under the Cartwright Act and adopted Judge Marutollo's recommendation to grant Defendants' motion to dismiss.  The Court explained that Plaintiffs do not sufficiently allege "that they participated in the relevant market where anticompetitive behavior occurred," therefore failing California's "market participant rule" requiring antitrust plaintiffs "show an injury within the area of the economy that is endangered by a breakdown of competitive conditions."  *Palladino*, 2024 WL 5248824, at *13 (citations omitted).  Plaintiffs assert that Visa and Mastercard set rules and fee schedules (the "Rules") that establish the interchange amounts

---

[3]  (Pls.' Objs. to R&R, Docket Entry No. 93; Pls.' Corrected Objs. to R&R ("Pls.' Objs."), Docket Entry No. 94; Defs.' Mem. in Opp'n to Pls.' Objs. ("Defs.' R&R Opp'n"), Docket Entry No. 95; Pls.' Reply in Supp. of Pls.' Objs. ("Pls.' R&R Reply"), Docket Entry No. 96.)

that card-issuing member banks must charge in the "General Purpose Card Network Services market," while Plaintiffs participate in the markets for "Merchant Acceptance of General Purpose Credit Cards" and "Merchant Acceptance of Debit Cards." *Id.* Plaintiffs allege that "[m]ost purchases made with payment-cards are made" in the markets for "Merchant Acceptance of General Purpose Credit Cards" and "Merchant Acceptance of Debit Cards," and those markets are where the networks and issuing banks compete to have more cardholders using their cards. *Id.* Because Plaintiffs did not allege that they participated in the General Purpose Card Network Services market where the alleged conspiracy and price-fixing occurred, Plaintiffs failed to satisfy California's "market participant rule" and could not establish antitrust injury. *Id.* In addition, the Court adopted Judge Marutollo's unopposed recommendation that the Court grant PNC's motion to dismiss for lack of personal jurisdiction and deny Plaintiffs' request for jurisdictional discovery. *Id.* at *4.

Plaintiffs now seek reconsideration of the Court's December 2024 Decision. In particular, they seek reconsideration on the grounds that (1) "Plaintiffs allege participation in the relevant market"; (2) "[t]he Court erred in its conclusion that there are two markets in play"; (3) "[b]ecause the merchants are co-conspirators with the banks and the networks, the payment by the cardholder of the illegal fee is injury in fact"; (4) "[t]his Court has personal jurisdiction over PNC" under the Clayton Act;[4] and (5) "[t]he antitrust laws were designed to protect the consumer, in this case the cardholder." (Pls.' Mem. 4–5.)

---

[4] As discussed in section II.b. *infra*, Plaintiffs have forfeited their opportunity to object to the R&R's conclusion that the Court lacks jurisdiction over PNC because they did not timely object to that portion of the R&R.

## II.    Discussion

### a.    Standard of review

The standard for granting a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Commerzbank AG v. U.S. Bank, N.A.*, 100 F.4th 362, 377 (2d Cir. 2024) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *Van Buskirk v. United Grp. of Cos., Inc.*, 935 F.3d 49, 54 (2d Cir. 2019) (same); *see also* S.D.N.Y. & E.D.N.Y. Local Civ. R. 6.3 (providing that the moving party must "set[] forth concisely the matters or controlling decisions which counsel believes the [c]ourt has overlooked"). "Controlling decisions include decisions from the United States Court of Appeals for the Second Circuit; they do not include decisions from other circuits or district courts . . . ." *Pentacon BV v. Vanderhaegen*, No. 23-CV-2172, 2024 WL 3835334, at *12 (S.D.N.Y. Aug. 15, 2024) (quoting *Cobalt Multifamily Invs. I, LLC v. Shapiro*, No. 06-CV-6468, 2009 WL 4408207, at *2 (S.D.N.Y. Dec. 1, 2009)); *see also Tenemille v. Town of Ramapo*, No. 18-CV-724, 2022 WL 2047819, at *5 (S.D.N.Y. June 7, 2022) (quoting same).  In addition to considering any evidence or controlling cases the court overlooked, the court should also consider whether there has been "an intervening change of controlling law." *Commerzbank AG*, 100 F.4th at 377 (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992); *Ethridge v. Bell*, 49 F.4th 674, 688 (2d Cir. 2022) (quoting *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013)); *Network Apps, LLC v. AT&T Mobility LLC*, --- F. Supp. 3d ---, 2025 WL 1114903, at *4 (S.D.N.Y. Apr. 15, 2025) ("Reasons to 'depart from the law of the case and reconsider [an] issue' may include 'an intervening change of controlling law,

the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" (alteration in original) (quoting *Gulino v. Bd. of Educ. of N.Y.C. Sch. Dist. of the City of New York*, 555 F. App'x 37, 40 (2d Cir. 2014))); *Johnson v. Mount Sinai Hosp. Grp., Inc.*, No. 22-CV-2936, 2023 WL 3159233, at *1 (E.D.N.Y. Apr. 28, 2023) (quoting *Kolel Beth Yechiel Mechil of Tartikov, Inc.*, 729 F.3d at 104).

It is thus well-settled that a motion for reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking [another] bite at the apple." *U.S. for Use & Benefit of Five Star Elec. Corp. v. Liberty Mut. Ins. Co.*, 758 F. App'x 97, 101 (2d Cir. 2018) (alteration in original) (quoting *Analytical Survs., Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012), *as amended*, (July 13, 2012)). "A motion for reconsideration is not an opportunity for a [party] to 'relitigate an issue already decided' or present arguments that could have been made before the judgment was entered." *Ethridge*, 49 F.4th at 688 (quoting *Shrader*, 70 F.3d at 257); *see also Doe v. Martucci*, No. 20-CV-2331, 2024 WL 5118505, at *2 (S.D.N.Y. Dec. 16, 2024) ("[A] motion for reconsideration is neither an occasion for repeating old arguments previously rejected nor an opportunity for making new arguments that could have been previously advanced." (quoting *Assoc. Press v. U.S. Dep't of Def.*, 395 F. Supp. 2d 17, 19 (S.D.N.Y. 2005))); *Salveson v. JP Morgan Chase & Co.*, 166 F. Supp. 3d 242, 248 (E.D.N.Y. 2016) ("A motion for reconsideration is 'neither an occasion for repeating old arguments previously rejected nor an opportunity for making new arguments that could have previously been made.'" (quoting *Simon v. Smith & Nephew, Inc.*, 18 F. Supp. 3d 423, 425 (S.D.N.Y. 2014))), *aff'd*, 663 F. App'x 71 (2d Cir. 2016).

### b.    The Court denies Plaintiffs' motion for reconsideration

Plaintiffs argue that the Court "overlooked and misapprehended materials points of fact and law," including one that "substantially affect[s] the enforcement of antitrust case law." (Pls.' Mem. 4.) First, Plaintiffs argue that the Court erred in concluding that Plaintiffs do not participate in the relevant market and in concluding "that there are two markets in play . . . when in fact and as a matter of law there is only one." (*Id.* at 4, 7–9, 11–12.) They argue that the "relevant product market  . . . is the General Purpose Payment-Card Market," which is "one whole two-sided market" that Plaintiffs participate in. (Pls.' Reply 3–4; *see also* Pls.' Mem. 12.) In the alternative, they argue that the Court overlooked the "target exception" to the market participation rule, which "hold[s] that participation in the market is not controlling if the nature of the harm alleged was the result of anticompetitive conduct." (Pls.' Reply 7–8.) Second, Plaintiffs argue that the Court incorrectly concluded the Plaintiffs failed to establish antitrust injury because "merchants are co-conspirators with the banks and the networks" and "payment by the cardholder of the illegal fee is injury in fact." (Pls.' Mem. 4–6, 8–10; *see also* Pls.' Reply. 2, 6.) They contend that because merchants are co-conspirators, the "cardholders are the efficient enforcers because they are the only enforcers." (Pls.' Reply 2.) Third, Plaintiffs argue that the Court has personal jurisdiction over PNC under the Clayton Act and the Court should grant jurisdictional discovery under Rule 1 of the Federal Rules of Civil Procedure.[5] (Pls.' Mem. 4–5.)

---

[5] In addition, Plaintiffs request oral argument because "the [D]efendant[s'] motion is dispositive and, under the [Fifth] Amendment to the U.S. Constitution due process of law has been consistently interpreted as a 'hearing,' not a 'writing.'" (Pls.' Mem. 5 (citing Fed. R. Civ. P. 12(i), 14 (citing Fed. R. Civ. P. 4)). Defendants note that Plaintiffs "do[] not support their assertion that they 'have a constitutional right to be "heard"' by means of oral argument," but that they do not oppose oral argument. (Defs.' Opp'n 11.) It is well-settled that "a district

Defendants argue that Plaintiffs "do not (as they must) identify 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice,'" and the Court should therefore deny Plaintiffs' motion. (Defs.' Opp'n 4 (citations omitted).) First, they argue that Plaintiffs "merely relitigate arguments this Court already considered and rejected." (*Id.* at 5.) In support, Defendants note that the Court "explicitly and repeatedly considered the allegation of merchants' conspiracy" and also acknowledged Plaintiffs' allegation that cardholders pay inflated prices. (*Id.* at 5–6.) Accordingly, Defendants contend that the Court did not, as Plaintiffs argue, overlook those arguments in the December 2024 Decision. (*Id.*) In addition, Defendants argue that even if the Court did overlook Plaintiffs' allegations about merchants' participation in the conspiracy and inflated consumer prices, there would still be "no error in the Court's antitrust standing analysis." (*Id.*) They argue that the Court "clearly explained" that Plaintiffs failed to establish antitrust injury because they did not allege participation in the relevant market. (*Id.* at 6–7.) Defendants further contend that Plaintiffs' citation to *Continental Ore Co. v. Union Carbide and Carbon Corp.*, 370 U.S. 690 (1962), and *Reiter v. Sonotone Corp.*, 442 U.S. 330 (1979), does not support their argument that the Court misapplied antitrust law. (*Id.* at 7–8.) Second, Defendants argue Plaintiffs incorrectly assert the Court has personal jurisdiction over PNC. They note that Plaintiffs did not object to Judge Marutollo's recommendation that the Court dismiss the claims

---

court's decision whether to permit oral argument rests within its discretion." *Whitnum v. Town of Woodbridge*, 833 F. App'x 924, 925 (2d Cir. 2021) (quoting *AD/SAT, Div. of Skylight, Inc. v. Assoc. Press*, 181 F.3d 216, 226 (2d Cir. 1999)). The Court denies Plaintiffs' request for oral argument because it is not necessary to decide the pending motion. *See Penzo v. Consol. Edison Co. of N.Y., Inc.*, No. 19-CV-7478, 2025 WL 369708, at *1 n.2 (S.D.N.Y. Feb. 3, 2025) (denying request for oral argument because it was "not needed to rule" on the motion); *Gabay v. Roadway Movers, Inc.*, 671 F. Supp. 3d 371, 375 (S.D.N.Y. 2023) (denying request for oral argument because it "would not be helpful to the [c]ourt"), *appeal withdrawn*, No. 23-757, 2023 WL 7298749 (2d Cir. Aug. 8, 2023).

against PNC for lack of personal jurisdiction and "cannot move for reconsideration of that to which they failed to object." (*Id.* at 8.) In addition, they argue that Plaintiffs incorrectly cite to the Clayton Act as the basis for the Court's jurisdiction over PNC because "the federal Clayton Act does not apply to state-law claims." (*Id.* at 8–9.)

The Court denies Plaintiffs' motion for reconsideration because Plaintiffs do not identify any facts or controlling law that the Court overlooked in the December 2024 Decision. Plaintiffs argue that the Court did not address their allegations regarding "merchant direct participation in the conspiracy," (Pls.' Mem. 5; *see also* Pls.' Reply 2–3), and that cardholders "bear the actual cost of the overcharge in the form of universally higher prices,"[6] (Pls.' Mem. 6). The Court explicitly credited Plaintiffs' allegations regarding merchants' participation in the alleged conspiracy. *See Palladino*, 2024 WL 5248824, at *12 (explaining that Plaintiffs sufficiently allege that "cardholders are harmed by merchants and Defendants not disclosing" that the cardholder "pays an interchange fee for each transaction" and therefore "'pay[s] the illegal transaction price' resulting from th[e] conspiracy" between merchants and Defendants (citing Am. Compl. ¶ 83), and that "cardholders pay 'inflated prices for everything because interchange is built into ticket prices,'" (*id.* ¶ 81)). Plaintiffs also argue that the Court did not consider Plaintiffs' "participation in the market impacted by the conspiracy." (Pls.' Mem. 5, 7–8, 10–11.) Plaintiffs acknowledge that "[t]he precise nature and operation of the market in which the

---

[6] Plaintiffs also argue that the Court overlooked their argument that "cardholders are the only persons capable of enforcing the price fixing claims" and there "are no innocent players left." (Pls.' Mem. 8.) The Court did not overlook that argument but rather rejected it because Plaintiffs' injuries "rel[ied] on injury to third parties (merchants)" and are "secondary, consequential, and remote." *Palladino*, 2024 WL 5248824, at *15. Merchants, who experience direct harm from the interchange fees, are better positioned to bring these claims, as evidenced by their long-running challenge to interchange fees that the Court has presided over for twenty years. *See In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, No. 05-MD-1720.

conspiracy was hatched is unclear,"[7] but argue that "regardless of the market definition ascribed, there is no doubt that Plaintiffs participated in it with every purchase made and card balance tendered." (*Id.* at 9.) In support, Plaintiffs repeatedly cite Visa's admission that "[p]urchases o[r] transactions made with a Visa-branded payment card typically involve a cardholder, merchant, acquiring bank and issuing bank." (*Id.* at 4 (quoting Defs.' Answer to Am. Compl. ¶ 104, Docket Entry No. 11); *see also id.* at 13; Pls.' Reply 3.) It is not clear to the Court, and Plaintiffs do not explain, how that admission bears on Plaintiffs' participation in the relevant market or the relevant market definition. In addition, the December 2024 Decision acknowledges that merchants, cardholders, acquiring banks, and issuing banks are typically involved in payment card transactions. *Palladino*, 2024 WL 5248824, at *14 (explaining that a "Cardholder presents card to Merchant," who submits the "transaction to its Bank for approval," and then the "Merchant Bank sends an authorization request to the Cardholders' Bank"). The Court did not overlook Plaintiffs' arguments that they participate in the relevant market, but rather concluded that Plaintiffs do not sufficiently allege that they "participated in the relevant market where anticompetitive behavior occurred." *Id.* at *13. The Court explained that Plaintiffs describe separate markets, one where the alleged "horizontal agreements that eradicate competition" occurs, and another where "cardholders engage in transactions," and it is well-established that participation in a "separate, albeit related" market is insufficient to establish antitrust injury. *Id.* Plaintiffs' disagreement with the Court's analysis of their allegations about

---

[7] Plaintiffs continue to refer to the relevant market in multiple ways that are sometimes inconsistent with each other. For example, Plaintiffs state that "the relevant market is the *General Purpose Card Network Services Market*," (Pls.' Mem. 5), but also assert that the "'General Purpose Card Network Services' is not by itself a relevant product market," (Pls.' Reply 5). As the Court noted in the December 2024 Decision, the Court is not bound by Plaintiffs' descriptions of the relevant market, and Plaintiffs have identified no facts about the relevant market or market definition that the Court did not previously consider.

the relevant market and market definition do not constitute overlooked facts warranting reconsideration.  Plaintiffs have not identified any facts that demonstrate the Court overlooked evidence about the alleged conspiracy or Plaintiffs' antitrust standing.  *Hill v. Soar Rests. II LLC*, No. 23-CV-396, 2025 WL 900714, at *3 (N.D.N.Y. Mar. 25, 2025) (denying reconsideration because movant's arguments were "little more than an attempt to relitigate issues that have already been decided," and also noting that the court "notably considered all of the allegations" movant argues the court overlooked, and that movant "may disagree with the [c]ourt's conclusion . . . but that does not make it erroneous"); *Byram v. N.Y.C. Dep't of Educ.*, No. 23-CV-3999, 2024 WL 4504712, at *1–2 (E.D.N.Y. Oct. 16, 2024) (denying reconsideration where movants did not identify "facts previously overlooked by the [c]ourt" but merely "repeat[ed]" and "recycle[d] its argument[s]" from the original briefing); *Pentacon BV v. Vanderhaegen*, No. 23-CV-2172, 2024 WL 3835334, at *8 (S.D.N.Y. Aug. 15, 2024) (denying reconsideration and explaining that the court did not "overlook[]" plaintiffs' allegations but "[p]laintiffs' allegations were simply insufficient" to survive a motion to dismiss); *Sunbelt Rentals, Inc. v. McAndrews*, No. 21-CV-774, 2022 WL 603031, at *4 (D. Conn. Feb. 28, 2022) (denying reconsideration because "[p]laintiff's view diverges from the [c]ourt's conclusion not because the [c]ourt overlooked critical evidence, but because [p]laintiff disagrees with the [c]ourt's" interpretation of the evidence).

Plaintiffs identify no controlling law that the Court overlooked in the December 2024 Decision.  First, Plaintiffs argue that "[t]his case differs substantively from *Salveson*" because the *Salveson* plaintiffs did not "allege the merchants are co-conspirators," and "[b]oth the [D]efendants' and [Judge Marutollo's] insistence that the *Salveson* holding applies here is and must be premised upon their disbelief in Plaintiffs['] co-conspirator allegation."  (Pls.' Mem. 10

13

(citing *Salveson v. JP Morgan Chase & Co.*, 166 F. Supp. 3d 242, 264 (E.D.N.Y. 2016) (*"Salveson II"*), *aff'd*, 663 F. App'x 71 (2d Cir. 2016) (*"Salveson III"*).)  The Court directly addressed this argument in the December 2024 Decision.  The Court noted that Plaintiffs argued that *Salveson II* was "readily distinguishable" because "the *Salveson* plaintiffs brought federal claims and alleged to be direct purchasers of interchange fees" while *Palladino* plaintiffs brought state claims and alleged to be indirect purchasers.  *Palladino*, 2024 WL 5248824, at *14.  The Court concluded Plaintiffs' argument did not "alter the structure of the market where the alleged anticompetitive conduct occurs" and that Plaintiffs alleged a "transaction [that] is identical to the structure in *Salveson*" and insufficient to establish that Plaintiffs participated in the relevant market.  *Id.*  The Court rejects Plaintiffs' attempt to relitigate an argument already decided.  *See Clean Air Car Serv. & Parking Branch Three, LLC v. Clean Air Serv. & Parking Branch Two, LLC*, No. 24-CV-5444, 2025 WL 1002191, at *3 (E.D.N.Y. Apr. 3, 2025) (denying a motion for reconsideration where movant "urge[d] th[e] [c]ourt to reopen well-settled issues" and "simply repackaged arguments that will not support reconsideration"); *In re Amazon.com, Inc. eBook Antitrust Litig.*, No. 21-CV-351, 2025 WL 833390, at *4 (S.D.N.Y. Mar. 17, 2025) (denying reconsideration because movant "merely restate[d] and incorporate[d] by reference prior arguments" that were "presented at length in its briefing" without pointing "to new facts or overlooked caselaw"); *Keir v. Schoeberl*, No. 25-CV-56, 2025 WL 520764, at *2 (N.D.N.Y. Feb. 18, 2025) (denying reconsideration where movant did not "argue that there has been an intervening change in the controlling law or that new evidence necessitates reconsideration" but "merely attempt[ed] to reargue the issues already determined by th[e] [c]ourt"); *McFarlane v. First Unum Life Ins. Co.*, No. 16-CV-7806, 2020 WL 8991741, at *3 (S.D.N.Y. Mar. 27, 2020) (denying reconsideration where movant "merely 'does not like the way the original motion was

resolved'"  (quoting *Allied Mar., Inc. v. Rice Corp.*, 361 F. Supp. 2d 148, 149 (S.D.N.Y. 2004))).

Second, Plaintiffs' citations to *Reiter v. Sonotone Corp.* and *Continental Ore Co. v. Union Carbide and Carbon Corp.* are inapposite.  Plaintiffs cite *Reiter* for the proposition that "[t]he essence of the antitrust laws is to ensure fair price competition in an open market" and "[t]he antitrust laws were designed to protect the consumer, in this case the cardholder," both of which are inapposite to the Court's conclusion that Plaintiffs did not sufficiently allege antitrust standing.  (Pls.' Mem. 5, 7–8 (citing *Reiter*, 442 U.S. at 342).)  The Supreme Court's decision in *Reiter*, which pre-dated *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519 (1983), by four years, stands for the conclusion that consumers suffer an injury to their "property" when an alleged antitrust conspiracy forces them to pay a higher price for goods and services.  442 U.S. at 338–42.  *Reiter* has no bearing on Plaintiffs' failure to sufficiently allege participation in the relevant market.  Plaintiffs also cite *Continental Ore* for the proposition that "[e]very combination and conspiracy must be judged as a whole without tightly compartmentalizing the various factual components" and that courts must view alleged antitrust conspiracies "as a whole."[8]  (Pls.' Mem. 4; *see also* Pls.' Reply 2.)

---

[8]  Plaintiffs cite *Continental Ore Co. v. Union Carbide and Carbon Corp.*, 370 U.S. 690 (1962), for the first time in their motion for reconsideration.  "In order to prevail [on a motion for reconsideration], the moving party 'must demonstrate that the [c]ourt overlooked controlling decisions or factual matters that were put before the [c]ourt on the underlying motion.'" *Lichtenberg v. Besicorp Grp., Inc.*, 28 F. App'x 73, 75 (2d Cir. 2002) (quoting *Fulani v. Brady*, 149 F.R.D. 501, 503 (S.D.N.Y. 1993), *aff'd sub nom. Fulani v. Bentsen*, 35 F.3d 49 (2d Cir. 1994)); *Bravia Cap. H.K. Ltd. v. SL Green Realty Corp.*, No. 24-CV-2296, 2025 WL 950622, at *1 (S.D.N.Y. Mar. 28, 2025) ("To merit reconsideration, '[t]he moving party is required to demonstrate that the [c]ourt overlooked the controlling decisions or factual matters that were put before the [c]ourt in the underlying motion.'"  (first alteration in original) (quoting *Ackerman v. Ackerman*, 920 F. Supp. 2d 473, 474 (S.D.N.Y. 2013))); *Ahmed v. Mayorkas*, No. 21-CV-362, 2024 WL 1765561, at *1 (N.D.N.Y. Apr. 24, 2024) ("To prevail [on a motion for reconsideration], the moving party must demonstrate that the [c]ourt overlooked controlling decisions or factual matters that were put before the [c]ourt on the underlying motion."  (quoting

*Continental Ore* concluded that "the interpretation and significance of" evidence about the existence of an antitrust conspiracy "were for the jury" rather than a court to decide.  370 U.S. at 701.  This argument is also plainly unrelated to the Court's conclusion that Plaintiffs failed to establish antitrust standing.  Plaintiffs have therefore failed to identify controlling law that the Court overlooked in the December 2024 Decision.  *See In re Miniso Grp. Holding Ltd. Sec. Litig.*, No. 22-CV-9864, 2025 WL 965688, at *10–11 (S.D.N.Y. Mar. 30, 2025) (denying reconsideration because movant cited cases that were "inapplicable" and failed to "identify any controlling law . . . overlooked by the [c]ourt"); *Columbo v. Philips Bryant Park LLC*, No. 22-CV-775, 2025 WL 1043685, at *1–2 (S.D.N.Y. Apr. 8, 2025) (denying reconsideration where movant "identifie[d] only a single new case in his motion for reconsideration" and the court explained that case was "inapposite"); *Xene Corp. v. Nouryon B.V.*, No. 22-CV-2850, 2024 WL 4932764, at *7 (E.D.N.Y. Dec. 2, 2024) (denying reconsideration where movant argued the court overlooked case law that was not "controlling, or even applicable" to the issues in the case).

Third, Plaintiffs argue that the Court "fail[ed] to address the important controlling *exception* to the rule requiring Plaintiff[s'] participation in the market affected by the conspiracy."[9]  (Pls.' Reply 6.)  They argue that the Court overlooked the "target exception" to

---

*Lichtenberg*, 28 F. App'x at 75)), *aff'd sub nom. Ahmed v. Noem*, No. 24-1260, 2025 WL 428424 (2d Cir. Feb. 7, 2025).  Although the Court need not consider *Continental Ore* because it was not before the Court on the underlying motion, the Court nevertheless addresses Plaintiffs' arguments.

[9]  Plaintiffs raise their "target exception" argument for the first time in their reply brief on their motion for reconsideration.  "[I]t is hornbook law that '[a]rguments may not be made for the first time in a reply brief.'"  *Browe v. CTC Corp.*, 15 F.4th 175, 191 (2d Cir. 2021) (second alteration in original) (quoting *Knipe v. Skinner*, 999 F.2d 708, 710–11 (2d Cir. 1993)); *see also Errato v. Seder*, No. 23-638, 2024 WL 726880, at *3 (2d Cir. Feb. 22, 2024) (explaining that movant "has forfeited any argument . . . by not raising the issue in his opening brief" (quoting *Knipe*, 999 F.2d at 711)).  In addition, the Court need not consider arguments that were raised for

16

the market participant requirement, which "exists for parties whose injuries are inextricably intertwined with injuries to market participants or with the injuries the conspiracy sought to inflict."  (*Id.* at 7 (internal quotation marks omitted) (citing *Lorenzo v. Qualcomm*, 603 F. Supp. 2d 1291, 1295 (S.D. Cal. 2009)).)  Plaintiffs contend that they are "inextricably intertwined" because they "are victims of the non-disclosure alleged" and "pay the inflated prices not to the merchants but to their banks" and are therefore "the intended *targets* of the conspiracy to fix interchange fees hatched by Defendants."  (*Id.* at 8.)  None of the cases Plaintiffs cite apply the "target exception" to Cartwright Act claims.  The *Lorenzo* court explains that the exception applies to the standing requirement under the federal Clayton Act.  *Lorenzo*, 603 F. Supp. 2d at 1300.  The cases Plaintiffs cite in support of their argument that the Court overlooked the "target exception" to the market participation rule also only discuss that exception in the context of the federal antitrust laws.  *See Blue Shield of Va. v. McCready*, 457 U.S. 465, 483–84 (1982) (describing plaintiff's injury as "inextricably intertwined with the injury the conspirators sought to inflict" when evaluating antitrust standing under Section 4 of the Clayton Act); *Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1054–57, 1057 n.5 (9th Cir. 1999) (stating that the court "recognize[s] that the Supreme Court has carved a narrow exception to the market participant requirement for parties whose injuries are 'inextricably intertwined' with the injuries of market participants" in evaluating antitrust standing under Section 4 of the Clayton Act);

---

the first time on a motion for reconsideration.  *See Phillips v. City of New York*, 775 F.3d 538, 544 (2d Cir. 2015) ("Those arguments were raised for the first time in plaintiffs' motion for reconsideration and therefore were not properly presented to the district court."); *Oxman v. Drager*, No. 18-CV-687, 2018 WL 4043136, at *2–3 (S.D.N.Y. Aug. 13, 2018) ("[I]t is well-settled that '[a] party may not, on a motion for [reconsideration], raise an argument for the first time.'"  (alterations in original) (quoting *Image Processing Tech., LLC v. Canon, Inc.*, No. 10-CV-3867, 2012 WL 253097, at *2 (E.D.N.Y. Jan. 26, 2012))).  The Court addresses Plaintiffs' "target exception" argument even though they improperly seek to litigate new claims in a reply brief to their motion for reconsideration.

*Ostrofe v. H.S. Crocker Co.*, 740 F.2d 739, 745 (9th Cir. 1984) (explaining that the Supreme

Court recognized antitrust standing for a plaintiff whose injury was "inextricably intertwined"

with the conspirators' intended injury in a case brought under Section 4 of the Clayton Act

(quoting *Blue Shield*, 457 U.S. at 483–84)).[10]  These cases do not evaluate antitrust standing, or

discuss the applicability of the "target exception," under California's Cartwright Act, which is

the antitrust law Plaintiffs allege Defendants violated.[11]  The Court therefore rejects Plaintiffs'

---

[10]  Plaintiffs also incorrectly state that *Kolling v. Dow Jones & Co.*, 187 Cal. Rptr. 797 (Ct. App. 1982), and *Vinci v. Waste Management, Inc.*, 43 Cal. Rptr. 2d 337 (Ct. App. 1995), "cite[] to an exception to the market participation requirement." (Pls.' Reply 7.)  *Kolling* cites to *Saxer v. Philip Morris, Inc.*, 126 Cal. Rptr. 327 (Ct. App. 1975), for the proposition that a "plaintiff in a Cartwright Act proceeding must show that an antitrust violation was the proximate cause of his injuries," that the plaintiff must be "within the 'target area' of the antitrust violation," and that the plaintiff's alleged injuries cannot be "secondary, consequential, or remote, but the direct result of the unlawful conduct."  *Kolling*, 187 Cal. Rptr. at 807–08 (internal quotation marks omitted) (quoting *Saxer*, 126 Cal. Rptr. at 336, 338).  *Saxer* was not, as Plaintiffs argue, invoking the market participation "target exception" rule established in *Blue Shield* (nor could it have, because *Saxer* pre-dated *Blue Shield* by seven years), but rather explaining that a Cartwright Act plaintiff must be injured in "the area which it could reasonably be foreseen would be affected" by the antitrust conspiracy.  *Saxer*, 126 Cal. Rptr. at 338.  In other words, *Saxer* used the words "target area" to describe the market participation rule.  Similarly, *Vinci* did not "recognize[] the target exception to *AGC*'s standing factors" by citing *Ostrofe*.  (Pls.' Reply 7.)  The *Vinci* court only cited *Ostrofe* to distinguish it, and noted that "[i]n subsequent cases, even from the Ninth Circuit, *Ostrofe* has been limited to its unique facts." *Vinci*, 43 Cal. Rptr. 2d at 340.  Plaintiffs have therefore identified no law to support its argument that the *Blue Shield* exception applies to this case.

[11]  Most California courts applying the "target exception" do so under a federal antitrust standing analysis.  *See, e.g.*, *Adams v. Experian Info. Sols., Inc.*, No. 23-CV-1773, 2025 WL 19122, at *10 (E.D. Cal. Jan. 2, 2025) (finding plaintiffs lacked federal antitrust standing because they did not allege participation in the relevant market and did not allege their injuries were "inextricably intertwined" with the injury conspirators sought to inflict); *William Morris Endeavor Ent., LLC v. Writers Guild of Am., W., Inc.*, No. 19-CV-5465, 2020 WL 2559491, at *5 n.2 (C.D. Cal. Apr. 27, 2020) (same); *In re Napster, Inc. Copyright Litig.*, 354 F. Supp. 2d 1113, 1119–20 (N.D. Cal. 2005) (same).  At least one California federal court that applied the "target exception" to its federal antitrust standing analysis, did not apply that exception to its antitrust standing analysis under the Cartwright Act, and instead noted that "courts interpreting the Cartwright Act's antitrust standing requirement have consistently followed the 'market participant' rule."  *In re Napster*, 354 F. Supp. 2d at 1125–26.  The Court is therefore not persuaded that the "target exception" applies to antitrust standing under the Cartwright Act.

argument that it "overlooked" the applicability of the *Blue Shield* exception to Plaintiffs' Cartwright Act claim. *Poletti v. Pepsi-Cola Bottling Co. of N.Y., Inc.*, No. 21-CV-7603, 2025 WL 41609, at *4 (S.D.N.Y. Jan. 7, 2025) (denying reconsideration where movants argued that there was an "intervening change in controlling law" but the court concluded that the new case law "did not overrule any controlling law on which the [o]pinion was based; nor d[id] it have any other impact on the holding of the [o]pinion"); *Rosner v. United States*, No. 16-CV-7256, 2019 WL 1451253, at *1 (S.D.N.Y. Mar. 18, 2019) (denying reconsideration where the movant failed to "cite any intervening changes in controlling law").

In addition, Plaintiffs' arguments about the Court's jurisdiction over PNC are barred because Plaintiffs did not object to that portion of Judge Marutollo's R&R.  It is well-established that "a party's failure to object to any purported error or omission in a magistrate judge's report [forfeits] further judicial review of the point." *Kotlyarsky v. U.S. Dep't of Just.*, No. 22-2750, 2023 WL 7648618, at *1 (2d Cir. Nov. 15, 2023) (quoting *Cephas v. Nash*, 328 F.3d 98, 107 (2d Cir. 2003)), *cert. denied sub nom. Kotlyarsky v. Dep't of Just.*, 145 S. Ct. 279 (2024); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010) ("[A] party waives appellate review of a decision in a magistrate judge's Report and Recommendation if the party fails to file timely objections designating the particular issue." (citing *Cephas*, 328 F.3d at 107)).  There is no dispute that Plaintiffs did not object to Judge Marutollo's conclusion that the Court lacks personal jurisdiction over PNC and therefore forfeited further opportunities to object. *Johnson v. Chappius*, No. 24-1225, 2025 WL 999674, at *4 (2d Cir. Apr. 3, 2025) (noting that a movant's "argument on appeal is . . . waived" because his objection to the R&R did not raise the issue); *Demosthene v. City of New York*, 831 F. App'x 530, 536 (2d Cir. 2020) (explaining that movants waived "further judicial review of the findings

contained in the . . . R&R" after failing to object in a timely fashion).  In addition, as Defendants

note, the Clayton Act does not apply to state law claims, (Defs.' Mem. 8), and Plaintiffs'

assertion that the Court has jurisdiction over PNC under the Clayton Act because "PNC does

business in the United States," (Pls.' Mem. 4–5), is incorrect because Plaintiffs only bring

California state law claims.  *See In re Vitamin C Antitrust Litig.*, No. 05-CV-453, 2012 WL

2930109, at *8 (E.D.N.Y. July 18, 2012) ("Because . . . plaintiffs do not bring federal antitrust

claims, the Clayton Act cannot serve as a basis for this [c]ourt's jurisdiction . . . .").

###   c.    The Court denies Plaintiffs' request for leave to amend

Plaintiffs argue that the Court should grant their request for leave to amend their

complaint pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure.[12]  First, they argue

that "absent prejudice to Defendants," Plaintiffs "should be allowed full opportunity" to correct

or amend their pleading so "that the facts alleged [are] clearly before the Court in the manner

intended by the party submitting the allegations."[13]  (Pls.' Ltr. Mot. 2.)  They argue that the

---

[12]  On March 20, 2025, Plaintiffs filed a letter motion for a pre-motion conference requesting leave to amend and included as an exhibit a Proposed Second Amended Complaint. (Pls.' Ltr. Mot. for Leave to Amend ("Pls.' Ltr. Mot."), Docket Entry No. 102; Proposed Second Amended Complaint ("Proposed SAC"), annexed to Pls.' Ltr. Mot. as Ex. 2, Docket Entry No. 102-2.)  On March 28, 2025, Defendants opposed Plaintiffs' letter motion for a pre-motion conference.  (Defs.' Opp'n to Pls.' Ltr. Mot., Docket Entry No. 103.)  The Court reviews these filings in evaluating Plaintiffs' request for leave to amend.

[13]  Plaintiffs incorrectly argue that *Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160 (2d Cir. 2015), and *Williams v. Citigroup, Inc.*, 659 F.3d 208 (2d Cir. 2011), are dispositive of whether they should be allowed to further amend the Complaint.  (Pls.' Ltr. Mot. 3.)  In *Loreley*, the Second Circuit explained that it was "premature" for the district court to deny plaintiffs leave to amend after they declined to replead at a pre-motion conference in anticipation of defendants' motion to dismiss.  797 F.3d at 169, 190.  The Second Circuit noted that their decision "leaves unaltered the grounds on which denial of leave to amend has long been held proper, such as undue delay, bad faith, dilatory motive, and futility — none of which were a basis for the denial."  *Id.*  In this case, unlike in *Loreley*, the Court dismissed Plaintiffs' Amended Complaint after the motion was fully briefed and now reviews Plaintiffs'

Court should grant leave to amend because Defendants "will not be prejudiced by the timing or content of the amendments," and there is no "apparent or declared reason" to deny their request. (*Id.* at 2–3.) Second, Plaintiffs argue that their Second Amended Complaint will "allege facts showing that they participate in the relevant market impacted by the price fixing conspiracy." (*Id.* at 2.) Plaintiffs also argue that their Second Amended Complaint will clarify the alleged conspiracy between the banks, networks, and merchants, (Pls.' Mem. 6, 9–10, 12–13; *see also* Pls.' Ltr. Mot. 2), and clarify their allegation that "consumers are the targets and intended victims of the conspiracy," (Pls.' Ltr. Mot. 2).

Defendants argue that the Court should deny Plaintiffs' request for leave to amend because amendment would be futile. (Defs.' Opp'n to Pls.' Ltr. Mot. 1.) They argue that Plaintiffs "do not proffer additional facts" to cure the deficiencies in the Amended Complaint. (Defs.' Opp'n 5.) Defendants argue that Plaintiffs' "revised market definition only underscores that plaintiffs do not allege that they participate in the market where anticompetitive conduct occurs." (Defs.' Opp'n to Pls.' Ltr. Mot. 2.) They also contend that Plaintiffs' "proposed allegations regarding merchants partnering with issuing banks to offer co-branded credit cards . . . does nothing to address the reason" the Court dismissed Plaintiffs' claims. (*Id.* at 3.) Defendants also argue that "[P]laintiffs' proposed SAC fails to sufficiently allege personal

---

Proposed Second Amended Complaint for factual allegations that would cure the deficiencies the Court identified in the December 2024 Decision. In *Williams*, the Second Circuit reversed a district court that had denied leave to replead because plaintiff did not file their request either upon answering the motion to dismiss or immediately upon receipt of the court's dismissal of plaintiff's complaint. 659 F.3d at 214. Neither *Loreley* nor *Williams* has any bearing on Plaintiffs' motion to amend because those cases do not relate to denials of leave to amend based on futility.

jurisdiction over" PNC."[14]   (*Id.*)

Rule 15 of the Federal Rules of Civil Procedure provides that "[l]eave to amend should be 'freely give[n] . . . when justice so requires,' but 'should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party.'"   *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 28 (2d Cir. 2016) (second and third alterations in original) (first quoting Fed. R. Civ. P. 15(a)(2); and then quoting *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008)); *see also MSP Recovery Claims, Series LLC v. Hereford Ins. Co.*, 66 F.4th 77, 90 (2d Cir. 2023) ("A court should freely give leave when justice so requires, but it may, in its discretion, deny leave to amend for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party."  (internal quotation marks omitted)).

"Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure."  *Jang v. Trs. of St. Johnsbury Acad.*, 771 F. App'x 86, 88 (2d Cir. 2019) (quoting *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012)); *see also Bus. Casual Holdings LLC v. YouTube, LLC*, No. 22-CV-3007, 2023 WL 6842449, at *1 (2d Cir. Oct. 17, 2023) ("Proposed amendments are futile if they would fail to cure prior deficiencies or state a claim."  (quoting *IBEW Loc. Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scot. Grp., PLC*, 783 F.3d 383, 389 (2d Cir. 2015))); *Chunn v. Amtrak*, 916 F.3d 204, 208 (2d Cir. 2019) ("Amendment is futile if it fails 'to cure prior deficiencies.'"  (quoting *Panther Partners Inc.*, 681 F.3d at 119)).  "Thus, the standard for denying leave to amend based on

---

[14]  Plaintiffs make no new arguments and do not allege any new facts to establish the Court's personal jurisdiction over PNC.  (*See generally* Proposed SAC.; Pls.' Ltr Mot.)  The Court therefore concludes that Plaintiffs do not seek to amend their pleadings as to PNC.

futility is the same as the standard for granting a motion to dismiss." *IBEW*, 783 F.3d at 389. "If the problems with a claim are 'substantive' rather than the result of an 'inadequately or inartfully pleaded' complaint, an opportunity to replead would be 'futile' and 'should be denied.'" *Jordan v. Chase Manhattan Bank*, 91 F. Supp. 3d 491, 510 (S.D.N.Y. 2005) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)). "[I]t is within the sound discretion of the district court to grant or deny leave to amend . . . ." *Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 447 (2d Cir. 2019) (quoting *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018)).

The Court denies Plaintiffs' request for leave to amend because amendment would be futile. As Plaintiffs recognize, the Court dismissed Plaintiffs' Amended Complaint because "they do not allege cardholder participation in the market where the anticompetitive conduct occurs." *Palladino*, 2024 WL 5248824, at *13. Plaintiffs' Proposed Second Amended Complaint seeks to allege additional facts that (1) Plaintiffs participate in the "two-sided transaction platform market," which is the market where antitrust injury occurs, (Proposed SAC ¶¶ 7–8, 62–63, 71, 76, 86, 88, 109–131); (2) merchants participate in the alleged conspiracy, (*id.* ¶¶ 55–59, 116); and (3) cardholders pay inflated prices as a result of the alleged conspiracy between banks, networks, and merchants, (*id.* ¶¶ 16, 19, 59–60, 62–63, 89, 145, 149). As discussed in section II.b *supra*, the December 2024 Decision accepted Plaintiffs' allegations that merchants participate in the conspiracy and that cardholders are injured by paying inflated prices resulting from the conspiracy, and therefore Plaintiffs' additional allegations as to those arguments are futile. *See Lewis v. Slaiby*, No. 23-CV-231, 2024 WL 1241937, at *5 (D. Conn. Mar. 22, 2024) (explaining that when amendment is "unlikely to be productive" it may be denied as "futile" (quoting *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002))); *Thorpe v. Duve*, No. 15-CV-736, 2020 WL 372676, at *3 (N.D.N.Y. Jan. 23, 2020) (finding

amendment would be futile where the proposed complaint "merely seeks to add additional factual allegations to expound on [p]laintiffs' claims" that "are irrelevant to the claims at issue").

Plaintiffs' remaining proposed amendments fail to sufficiently allege they participate in the relevant market. Plaintiffs' additional allegations about their participation in the relevant market are conclusory, (*see, e.g.*, Proposed SAC ¶ 8 ("The Visa / Mastercard transaction platforms participate on both cardholder and merchant sides in a single two-sided market for transactions where electronic payment and settlement of cardholders' card purchases takes place. . . . Plaintiffs participate in this market. Their antitrust injury alleged occurred in this market."; *see also id.* ¶¶ 109, 113), and do not alter the transaction structure that the Court analyzed in the December 2024 Decision. Plaintiffs' attempt to repackage the relevant market definition as a two-sided payment card market is unpersuasive because they continue to allege that "[t]he interchange-fee contracts are horizontal agreements that eradicate competition among the Visa and Mastercard acquiring banks for merchant-acceptance of their cards," (*compare* Am. Compl. ¶ 84 *with* SAC ¶ 90), and they allege the same transaction structure that the Court evaluated in the December 2024 Decision, (c*ompare* Am. Compl. ¶¶ 4, 116 *with* Proposed SAC ¶¶ 6, 145). As the Court explained, Plaintiffs' alleged "transaction structure in this case is the same as the transaction structure in *Salveson*," *Palladino*, 2024 WL 5248824, at *14, which the Second Circuit concluded failed to establish cardholders' antitrust standing, *Salveson III*, 663 F. App'x at 74–75. In addition, some of Plaintiffs' proposed amendments appear to support the Court's conclusion that Defendants set the Rules in a separate market from where cardholders make purchases. (*See, e.g.*, Proposed SAC ¶ 71 ("The [interchange] fee is described in the Rules . . . [which are] negotiated individually with the Merchant's Acquir[ing Bank].") Plaintiffs' proposed amendments fail to sufficiently allege participation in the market where

anticompetitive conduct occurs and the Court accordingly denies leave to amend because it would be futile.  *See Hendricks v. Garcia*, No. 24-CV-4864, 2025 WL 1114629, at *3 (E.D.N.Y. Apr. 15, 2025) (denying leave to amend where the court "explained . . . in detail the pleading deficiencies that [plaintiff] had to remedy" and plaintiff failed to sufficiently re-plead); *Ham v. Lenovo (U.S.) Inc.*, No. 22-CV-5131, 2025 WL 965141, at *6 (S.D.N.Y. Mar. 31, 2025) (explaining that "further amendment to try to save [p]laintiff's now-dismissed claims would be futile because 'the problems with [plaintiff's] causes of action are substantive' and 'better pleading will not cure them'"  (alterations omitted) (quoting *Cuoco*, 222 F.3d at 112)); *see also Kim*, 884 F.3d at 105–06 ("Therefore, because the proposed amendments would have no impact on the basis for the district court's dismissal and would consequently be futile, the district court did not abuse its discretion in denying [plaintiff] leave to amend."  (citing *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003))).

## III.  Conclusion

For the foregoing reasons, the Court denies Plaintiffs' motion for reconsideration and denies Plaintiffs' request for leave to amend.

Dated: May 12, 2025
          Brooklyn, New York

SO ORDERED:


_____s/ MKB_____
MARGO K. BRODIE
United States District Judge