UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

JOHN PALLADINO, GARIB KARAPETYAN, STEVE PALLADINO, AND JOHN NYPL, Individual Plaintiffs and on behalf of themselves and all others similarly situated,

        Plaintiffs

        v.

JPMORGAN CHASE & CO., JPMORGAN CHASE BANK N.A., BANK OF AMERICA CORPORATION, BANK OF AMERICA, NATIONAL ASSOCIATION, BANK OF AMERICA N.A., WELLS FARGO & COMPANY, WELLS FARGO BANK N.A., CITIGROUP INC, CITIBANK N.A., CITIBANK N.A. (NATIONAL ASSOCIATION), U.S. BANCORP, US BANCORP, U.S BANK NATIONAL ASSOCIATION, PNC FINANCIAL SERVICES GROUP, INC., PNC, PNC BANK NATIONAL ASSOCIATION, CAPITAL ONE F.S.B., CAPITAL ONE FINANCIAL CORPORATION, CAPITAL ONE BANK (USA), NATIONAL ASSOCIATION, CAPITAL ONE, NATIONAL ASSOCIATION, BANK OF THE WEST, VISA INC., VISA U.S.A. INC., VISA INTERNATIONAL SERVICE ASSOCIATION, MASTERCARD INCORPORATED, and MASTERCARD, Defendants.

        Defendants

Case No. 23-CV-1215 (MKB) (JAM)

NOTICE OF MOTION AND MOTION TO ALTER OR AMEND JUDGMENT UNDER FRCP RULE 59(e) and Rule 60.

Hon. Margo K. Brodie

1

## TABLE OF AUTHORITIES

**Cases**

*Associated General Contractors v. Carpenters* 359 U.S. 519 (1983)...........................5, 7

*Bell Atlantic Corp. v. Twombly* 550 U.S. 544 (2007) .......................................................8

*Brown Shoe Co. v. United States* 370 U.S. 294 (1962).....................................................5

*Knevelbaard Dairies v. Kraft Foods Inc.* 232 F.3d 979 (9th Cir 2000)..............................5

*Lorenzo v. Qualcomm*, 603 F. Supp. 2d 1291, 1295 (S.D. Cal. 2009)...............................7

*Metzler Inv. Gmbh v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 142–43 (2d Cir. 2020) 2

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) ..............................9

*Twin City Sportservice v. Charles O Finley & Co.* 676 F.2d 1291 (1982) .......................5

*Wolff v. McDonnell*, 418 U.S. 539 (1974).........................................................................9

**PLEASE TAKE NOTICE** that on as soon as the matter may be heard, in the courtroom of the Honorable Margo B. Brodie Plaintiffs will and hereby do respectfully move this Court for an Order to set aside the Court's May 17, 2025, Memorandum and Order (ECF Doc 104) enter the Court's decision denying the Defendants' Motion to Dismiss

This Motion is made pursuant to Rules 59(e) and 60(b) of the Federal Rules of Civil Procedure on the grounds that (1) the Order contains mistakes arising from oversight or omission of material points of fact and law, which, if considered, will result in the denial of the Defendants' Motions to Dismiss and the entry of judgment in favor of the Plaintiffs, and (2) the Order is contrary to Sections 5 and 16 of the Clayton Antitrust Act, Rules 1, 12 and 56 of the Federal Rules of Civil Procedure, the Due Process Clause of the Fifth Amendment to the Constitution, the intent of the U.S. Congress and the binding and controlling decisions by the Supreme Court of the United States.

This motion is based on this notice of motion and motion; the memorandum of points and authorities contained herein; upon all pleadings, records, and papers on file in this action; and upon such further arguments as may be presented to the Court at or prior to the hearing on the motion.

**INTRODUCTION**

1. Plaintiffs bring this motion for relief in order to correct a clear error and to prevent manifest injustice pursuant to FRCP Rule 59e and 60 to reverse the Court's Order herein by which this court dismissed Plaintiffs' entire action with prejudice. *Metzler Inv. Gmbh v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 142–43 (2d Cir. 2020).  The court has misinterpreted controlling law and dismissed Plaintiff's claims in without case or statutory support and in contravention of all relevant authority.

2. The court dismissed Plaintiffs' California Cartwright Act price fixing action on the sole and exclusive grounds that 1) the Plaintiffs have not sufficiently alleged their participation in the market in which the price fixing is alleged to have occurred, and 2) that the

1. "target exception" to this market participation requirement does not exist under the provisions of the Cartwright Act. Memorandum and Order, p Doc 104 (05-25-2025) (Order). The Court is demonstrably wrong on both counts. Plaintiffs seek relief from the order of dismissal and the Court's denial of Plaintiffs' request for leave to amend their First Amended Complaint.

3. Contrary to the finding of the Court on the dispositive issues mentioned above, Plaintiffs have in fact alleged and have sought amendment to more specifically allege their participation in the market impacted by the price fixing conspiracy, and they have alleged specifically and by proposed amendment that they as consumers are the direct and indeed, the primary target of the conspiracy alleged. Both allegations are required to be accepted as true in motions to dismiss under Rule 12(b)(6). In failing to do so the Court based its dismissal of Plaintiffs' California Cartwright action upon a manifest error of law. Moreover, Plaintiffs submitted request to file a Second Amended Complaint in order to address the deficiencies found by the court to exist in Plaintiffs' first and only operative complaint in this action. This request was denied on the same grounds – futility - as those posited in support of the dismissal Order.

**BACKGROUND**

4. Plaintiffs John Palladino, Garib Karepetyan, Steve Palladino, and John Nypl commenced the above-captioned putative class action on December 30, 2022, in the Superior Court of the State of California for the County of San Francisco, against Defendants Visa Inc., J.P Morgan Chase Bank and additional named national banks. Price fixing of interchange fees assessed in credit card transactions throughout the state in violation of California's Cartwright Act were charged. No federal claims were alleged. Two weeks later before effecting service, Plaintiffs filed their First Amended Complaint (FAC) to correct minor clerical errors but without any substantive changes.

**The Conspiracy Alleged – The Relevant Market**

5. Plaintiffs allege a statewide conspiracy entered into between Visa, Mastercard, the named member banks licensed to issue and process the credit/debit cards provided by Visa and Mastercard (the networks), and merchants authorized to accept those credit/cards in payment for goods and services. The conspiracy concerns the fee assessed by the Defendant banks in return

3

1  for the processing of the credit card payments made by cardholders. The fees are calculated as a
2  percentage (2%-3% percent) of the gross amount of the sale paid by the cardholder to the
3  merchant. There is a dispute as to who actually pays the fee here it is acknowledged that the
4  interchange fee is paid by the merchants to the banks that provide the merchants with access to
5  the network card processing facilities.

**Secrecy**

6. The payment and division and sharing of the interchange fees among the defendant banks is kept strictly secret by the merchants pursuant to their agreement to participate in the conspiratorial plan. The secrecy requirements are imposed by written agreements execute by the merchants, the banks and the networks. The agreements also contain written commitments by the parties to charge only the fees set by the networks and adhered to by the parties to the conspiracy.

7. The workings of the interchange fee payment process are not in dispute. Of importance here is the fact, also undisputed, that at the point of sale all of the parties to the conspiracy including the Plaintiffs operate together. Plaintiffs tender their card to the merchant in payment of the goods purchased. The merchant then electronically transmits the cardholder's payment to his bank. Merchant's bank transmits the payment to the cardholder's bank who then approves the purchase and deducts the purchase amount from the cardholder's account. Simultaneously the issuing bank deducts the agreed upon interchange fee and transmits the balance to the merchant's bank which also deducts its agreed share of the interchange fee and credits the remaining balance to the merchant's account. The entire transaction takes a few seconds.

8. Plaintiffs allege that the interchange fee is artificially inflated by agreement among the named Defendants *and* the unnamed co-conspirator Merchants. The fact that Plaintiff cardholders have alleged these facts is not disputed by the Court.

9. The first question for the Court is, assuming the conspiracy among the three entities is illegal, and assuming the interchange fee has been illegally inflated by the conspirators, and assuming the merchants have absorbed and then inflated the prices of the

4

products and services purchased by Plaintiffs using credit cards, do the cardholder purchaser Plaintiffs have standing to sue for recovery of the amount of the overcharge passed on to them in the price of the product/service purchased? Antitrust injury is acknowledged by the Court to have been properly alleged. The Court held the injury is to the merchants and the plaintiff's resulting corresponding injury derived from the merchants passing on of the overcharge is too remote to confer standing. Order at 11 note 6. This conclusion will be addressed further below.

**The Relevant Market**

10. Still remaining is the question whether notwithstanding the finding of antitrust injury, do plaintiffs have standing to bring suit under California's Cartwright Act? Order at 13-14. *Associated General Contractors v. Carpenters* 359 U.S. 519 (1983) requires an allegation and ultimately a finding that Plaintiffs participate in the market in which the conspiracy occurred and that their participation in that market caused the injury they claim to have incurred. *AGC Supra.*, See also *Knevelbaard Dairies v. Kraft Foods Inc.* 232 F.3d 979 (9th Cir 2000). "Antitrust injury requires that the injured party be a participant in the same market as the alleged malefactors." *Id* at 14. Order at 13.

11. The answer to the question of standing flows from the determination whether the Plaintiffs' participation in the card payment process is sufficiently "inextricably intertwined" with the illegal conspiracy to permit standing. *Knevelbaard supra.* This determination turns ultimately on whether the Plaintiffs have alleged a relevant market in which plaintiffs *participated* that was impaired by the price fixing conspiracy. The nature of the relevant market in which the conspiracy is alleged to have affected is a question of fact. *Twin City Sportservice v. Charles O Finley & Co.* 676 F.2d 1291 (1982), *Brown Shoe Co. v. United States* 370 U.S. 294 (1962). Plaintiffs alleged parts of what the relevant market includes and is at issue in this litigation in the FAC ¶¶71-80, 100-101. And again the market is alleged with more specificity in the proposed Second Amended Complaint. SAC at ¶62, ¶¶76-78, ¶¶109-130, ¶213 and ¶275.

12. Nonetheless, this court has chosen to make contrary factual findings as to the sufficiency of the relevant market alleged by Plaintiffs, whether the market alleged is the market

in which conspiracy occurred and whether Plaintiffs alleged their participation in that market. The FAC alleges at ¶100:

> *"General Purpose Card Network Services* is a relevant product market. *Merchant Acceptance of General Purpose Credit Cards* and *Merchant Acceptance of Debit Cards* are relevant product markets."

Plaintiffs then alleged in their proposed Second Amended Complaint at page 36 ¶110 that:

> "110. Plaintiffs participate in a two-sided Payment Card Market. It is one whole, platform-wide, general purpose card and payments market for transactions—the *Transaction Platform*—relevant market. Cardholders, merchants, banks, and the networks participate and interact in this market. Cardholders and issuers participate on one side, merchants and acquirers on the other, and the Visa / Mastercard network participates on both sides.27
> 111. On one side, cardholders contract with card-issuing banks to obtain debit and credit payment-cards for purpose of enabling electronic payments to retailers for goods and services, and for credit extension in the case of credit cards. On the other side, merchants contract with acquiring banks to obtain merchant services for purpose of processing the cardholders' electronic payments transactions. These are the merchants' sales transactions." SAC (Proposed) at 45 ¶110-111.

13. The Court concluded on this issue:

> "The Court did not overlook Plaintiffs' arguments that they participate in the relevant market, but rather concluded that Plaintiffs do not sufficiently allege that they "participated in the relevant market where anticompetitive behavior occurred." *Id.* at *13. The Court explained that "Plaintiffs describe separate markets, one where the alleged "horizontal agreements that eradicate competition" occurs, and another where "cardholders engage in transactions," and it is well-established that participation in a "separate, albeit related" market is insufficient to establish antitrust injury. *Id.* Plaintiffs' disagreement with the Court's analysis of their allegations about the relevant market and market definition do not constitute overlooked facts warranting reconsideration" Order at 13-14.

14. This holding is not only at odds with *Amex* holding requires inclusion and consideration of both sides of the transaction market it is also contrary to the well-established rule that relevant market determinations are questions of fact to be determined by the jury. *Id.*

15. Much reliance placed upon the Second Circuit holding in *Salveson III*. But there Plaintiffs did not ever allege that they paid inflated prices for goods. The sole allegation was that the Plaintiffs were direct purchasers of interchange fees from their issuing banks. The court

6

concluded they were not direct purchasers and were precluded from suit by *Illinois Brick*. Neither their relevant market definition or their participation were addressed or decided in that case.

16. At no point in any of the *Salveson* cases was it ever alleged that Plaintiffs' standing derived from anything other than the claim they that were direct purchasers of interchange fees from the offending banks. No relevant market was ever articulated or alleged to be in issue there. Nor *AGC* standing even addressed in any of those cases.

**The Target Exception**

17. Plaintiffs allege that the standing requirements set out on *AGC* are subject to the "target exception." The exception is set out in *Lorenzo v. Qualcomm*, 603 F. Supp. 2d 1291, 1295 (S.D. Cal. 2009)). Articulated and cited by the Court in its Order *Lorenzo* describes circumstances wherein market participation set out in *AGC* is not required. Specifically when an alleged victim is the target of the conspiracy his participation in the market affected by the conspiracy is not required. The Court does not dispute the validity of the exception as it is alleged clearly in the FAC and SAC. But without any authority or reference to California antitrust policy the Court concludes: "These cases [*Lorenzo* et al] do not evaluate antitrust standing, or discuss the applicability of the "target exception," under California's Cartwright Act, which is the antitrust law Plaintiffs allege Defendants violated. The Court therefore rejects Plaintiffs argument that it "overlooked" the applicability of the *Blue Shield* exception to Plaintiffs' Cartwright Act claim." Order at 19. The Court went to reject Plaintiff's allegation that the target exception applies under California law.

18. *Lorenzo* was a Cartwright Act case in which both Clayton Act standing and Cartwright Act standing were alleged. The target exception was described in detail because the Plaintiff was a remote indirect purchaser who according to the court had no relationship with the defendants, did no business on the market in which the price fixing occurred, and was an end user at least three levels of supply chain removed from the conduct at issue. Nor could he have been found to be a direct victim of the conspiracy or the necessary means by which it was carried out. Plaintiffs in the instant meet all of these requirements. They transact business and suffer

7

injury in the market in which the price fixing occurred, namely the issuing bank and the merchant; they deal directly with at least two of the co-conspirators when they pay for overpriced products using their credit cards, and they are necessary participants in the effectuation of the anti- competitive plan. Without the payments made by the Plaintiffs at the merchant's facilities there would be no purpose to the conspiracy. The Plaintiffs participate at literally every level save for the agreement to fix the price of the fees.

**Leave to Amend**

19. The Court denied Plaintiffs' request for leave to amend the First Amended Complaint. No previous amendments had been sought. (The Complaint was amended to correct clerical errors two weeks after filing. No substantive changes were made.) Full and complete redlined copies of the proposed Second Amended Complaint were filed with court prior to recitation of the Court's Memorandum and Order on Plaintiffs' motion for reconsideration.

20. The court recited the long list of cases that acknowledge great liberality required in allowing amendments. Indeed some district Courts have rules denying refusals of leave to amend when no previous amendments have been sought. The only ground for denial claimed here is futility. The basis for the Court's finding of futility is fatally flawed and manifestly unjust.

21. The Court simply does not believe the relevant market and market participation claims alleged in SAC. This is error. The Court is obligated to accept as true any reasonably posited factual allegations. *See Bell Atlantic Corp. v. Twombly* 550 U.S. 544 (2007). The amendments proposed were posited before receipt of the court's decision on Plaintiffs' Motion for Reconsideration. They set out a reasonable and provable relevant market. The amendment further alleged Plaintiffs' participation in that relevant. The fact that the Court does not accept the claim as true is simply not a viable basis for dismissal. That decision is for a jury to make after the issue has been vetted through expert testimony and market related discovery. They have not been vetted or analyzed by the court on motion to dismiss or otherwise.

22. Moreover, transaction structure alleged in the SAC is set out not only in ¶ 90 but extensively in paragraphs 76 through 92. The court's sole reference to SAC ¶90 is simply not

8

enough to fairly describe the workings of the vast market operating pursuant to an established conspiracy. And again, the reference to the Salveson litigation as somehow dispositive is sorely misplaced. That case had nothing whatsoever to do with relevant markets definitions or market participation. The claim as top the two sided market was discussed in the context of whether Salveson became transformed into a direct purchaser when the two sided market concept was inserted into to the mix.

**Oral Argument**

23. This a dispositive motion. If granted it will deny Plaintiffs their right to recover their property wrongfully taken. The 5th amendment precludes government participation in a taking without due process. Due process includes a hearing and a right to be heard, *See* the Supreme Court has interpreted the Due Process Clause and has reaffirmed this principal time and time again. See *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950); see also *Wolff v. McDonnell*, 418 U.S. 539 (1974).

24. FRCP Rule 12 I requires a hearing on any motion to dismiss. Writings are not hearings, they are writings.

Conclusion

25. Plaintiffs have alleged a conspiracy to fix prices. The Plaintiffs purchase products from the businesses who operate the conspiracy. The merchants inflate the prices of their goods by the amount of the fixed interchange fee. The Plaintiff, credit debit card holders, pay for the product purchased at the inflated prices by paying money to their Card issuing bank who also is a co-conspirator. The whole purpose of the conspiracy is aimed at extracting money from consumers, not merchants. Merchants participate in order to generate more business and higher prices. Banks participate in order to generate interchange fees that they deduct from every retail transaction that occurs in this country. It would be difficult to conceive of an arrangement more deceitful conspiratorial financially lucrative and illegal. The court has somehow concluded that the consumer plaintiffs who brought this suit should not be afforded their day in court because they lack standing to recover billions of dollars secretly taken from them by their banks and the merchants where they do daily business in good faith.

26. The motion to dismiss should be denied.

Dated: June 9, 2025

ALIOTO LAW FIRM
/s/     *Joseph M. Alioto*
Joseph M. Alioto, Sr.
Attorneys for Plaintiffs

| | |
|---|---|
| 1 | **ADDITIONAL PLAINTIFFS' COUNSEL** |
| 2 | Jeffery K. Perkins (CSBN 57996) |
| 3 | 1550-G Tiburon Boulevard, #344 |
|   | Tiburon, California  94920 |
| 4 | Telephone:  (415) 302-1115; |
| 5 | Email: jefferykperkins@aol.com |
| 6 | Lawrence G. Papale (SBN 67068) |
|   | LAW OFFICES OF LAWRENCE G. PAPALE |
| 7 | 1308 Main Street, Suite 117 |
| 8 | St. Helena, CA 94574 |
|   | Telephone: (707) 963-1704 |
| 9 | Email: lgpapale@papale.com |
| 10 | |
| 11 | Christopher A. Nedeau (SBN 81297) |
|    | NEDEAU LAW PC |
| 12 | 154 Baker Street |
|    | San Francisco, CA 94117-2111 |
| 13 | Telephone: (415) 516-4010 |
| 14 | Email: cnedeau@nedeaulaw. |

**CERTIFICATE OF COMPLIANCE**

The foregoing Motion To Alter Or Amend Judgment Under FRCP Rule 59(E) And Rule 60 of This Court's Order of 05-12-2025 complies with the type-volume limitations set forth in Local Civil Rule 6.3).  Plaintiffs' Motion To Alter Or Amend Judgment of This Court's Order Of 05-12-2025 contains 3,009 total words.

This Plaintiffs' motion complies with the typeface and type-style requirements of Federal Rule of Civil Procedure 32(g) because: the document has been prepared in proportionally spaced typeface using Microsoft Word 12- point Times New Roman with a Table of Authorities using Microsoft Word 12-point Times New Roman.

Dated:  June 9, 2025                                   ALIOTO LAW FIRM
                                                       /s/      *Joseph M. Alioto*
                                                       Joseph M. Alioto, Sr.
                                                       Attorneys for Plaintiffs